409 A.2d 19

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph WATSON, Appellant.**

Supreme Court of Pennsylvania.

Dec. 21, 1979.

---

Seymore H. Johnson, Jr., Philadelphia, for appellant.

Robert B. Lawler, Asst. Dist. Atty., Chief, Appeals Division, Lee M. Kaplan, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from a judgment of sentence of the Court of Common Pleas of Philadelphia County, Pennsylvania, the defendant having been found guilty of first degree murder, and the judgment of the sentence set at life.

On February 9, 1972 at about 4:00 p. m. two (2) males entered a bar in Philadelphia, within minutes of each other. One of these men, Joseph Clifford Watson, the appellant, came through a side entrance carrying a shotgun. In response to certain remarks made by his companion, the appellant ordered the patrons into the restrooms. One of the patrons was the decedent, Detective Douglas Alexander, an off-duty police officer, who knocked the shotgun aside, drew his revolver, and shot the appellant wounding him in the left thigh. The appellant then fired one shotgun blast, striking the decedent in the side of the face, neck, and torso, causing his death. Both appellant and his companion then fled.

The next day, at or about 7:00 a. m., a Philadelphia policeman saw someone, apparently in need of assistance, and upon approaching, saw the man was wounded, and

proceeded to transport him to a hospital for treatment. On the way to the hospital, the policeman learned that the man was Joseph Watson. The policeman, having previous knowledge that a man by that name was being sought in a police killing, notified police command of the incident, and proceeded to Temple University Hospital with appellant.

Homicide detectives arrived at Temple University Hospital, and being informed by the proper medical authorities that they could interview the appellant, interrogated him, after giving appellant his *Miranda* warnings. The appellant immediately admitted shooting Detective Alexander. During the interrogation the doctors and nurses continued treating appellant; however, the doctor in charge of the treatment said that the treatment was not disturbed by the detectives, nor was the condition of the patient imperiled. An oral inculpatory statement was obtained. This interrogation lasted from 7:15 a. m. to 12:50 p. m. that day including interruptions for medical treatment.

■ Appellant's first contention is that his confession was involuntary and should have been suppressed at trial. The appellant asserts that there should have been no interrogation until his wound had been fully treated. The standard of reviewing whether a confession is voluntary is set out in *Commonwealth v. Kichline*, 468 Pa. 265 at 280, 361 A.2d 282 at 290 (1976) where we stated that "[o]ur responsibility on review is 'to determine whether the record supports the factual findings of the court below and the legitimacy of the inference and legal conclusions drawn from those findings.'" The record does not support appellant's contention. The homicide detectives repeatedly asked the doctor in charge if there was any problem in questioning defendant. The doctor indicated that there was none. The appellant was not under the influence of drugs which would affect his will, and had only slight discomfort. Throughout the whole interrogation, the homicide detectives would step back, and allow the doctor or nurse to continue treatment. After each break for treatment, the detectives would inquire whether it was permissible to continue the questioning. On two separate

occasions, the appellant was read his *Miranda* warnings, and each time waived them prior to making the statements. The record here fully supports the factual findings and legal conclusions of the court below, which were: the evidence failed to show in any way whatsoever that during the period of appellant's questioning the police employed any undue techniques; the statement that appellant made was voluntary and not coerced; and the appellant understood his constitutional rights and waived the same intelligently and of his own free will while alert, oriented, and in only moderate distress.

Appellant further contends that the trial judge erred in refusing a request for a supplemental charge to the jury. The jury, after deliberating for a period of time, submitted a note to the trial judge which read:

"*Please define* aggravated robbery and burglary.

Options on Count 1 if not guilty of aggravated robbery and burglary."

In response, the trial judge defined aggravated robbery and burglary, murder in the first degree, murder in the second degree, and voluntary manslaughter. The foreman indicated that the submitted questions had been answered. Defense counsel then requested an instruction on the "option" of acquittal. This was refused, and the judge, once again, instructed the foreman to inquire of the jurors whether his response to the note had been satisfactory and to return to him if there were any further questions regarding the response. There were no further requests prior to the rendition of the verdict.

The record is clear that the general charge to the jury adequately covered the presumption of innocence, and the Commonwealth's burden of proof. In *Commonwealth v. McNeal*, 456 Pa. 394 at 401, 319 A.2d 669 at 674 (1974) we said: "[I]n evaluating the correctness of instructions to a jury, the charge must be read and considered in its entirety." Certainly, there is no need, nor is it desirable, to fully reinstruct a jury each time a specific inquiry is made. In review, we look at all of the instructions given to the jury,

taken as a whole, in determining the propriety of the charge. Here, reading and considering the charge in its entirety, we are satisfied that there was no error.

Judgment of sentence affirmed.

MANDERINO, J., did not participate in the consideration or decision of this case.