421 A.2d 684

**COMMONWEALTH of Pennsylvania,**

**v.**

**Donald HUNT, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 1979.

Filed July 3, 1980.

206

Bruce A. Carsia, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and MONTGOMERY and LIPEZ, JJ.

LIPEZ, Judge:

Appellant was convicted of possession of heroin[1] in a non–jury trial. His only contention is that the court below erred in denying his motion to suppress the heroin introduced against him at trial. Because we agree with appellant's argument that the heroin was obtained in an unlawful search of appellant's person, we reverse and grant a new trial.

Our function on review is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the

1. Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(16), *as amended*, 35 P.S. § 780–113(a)(16).

context of the record as a whole, remains uncontradicted. *Commonwealth v. Kichline*, 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976).[2]

A police officer's testimony was the only evidence at the suppression hearing. According to this testimony, the officer and his partner drove to the 600 block of Herron Avenue in Pittsburgh at about 4:40 p. m. on June 22, 1977, to investigate an anonymous telephone tip that several people were selling dope in that area. The officer had in that neighborhood in the past made narcotics arrests which had resulted in convictions. The weather that afternoon was clear and sunny.

Among a number of people on the block, the officer saw appellant and another black male making a "sort of exchange," in which each handed something to the other,

2. We believe *Commonwealth v. Kichline*, 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976), still correctly states the scope of review of a suppression order, despite the suggestion in *Commonwealth v. Willis*, 483 Pa. 21, 26, 394 A.2d 519, 521 (1978), that *Kichline* only applies when the suppression court makes no finding on the point being reviewed. More recently, the Court has unanimously followed *Kichline* without reference to the slightly different formula in *Willis*. *Commonwealth v. Watson*, 487 Pa. 169, 171, 409 A.2d 19, 20 (1979). *But cf. Commonwealth v. Kennedy*, 271 Pa.Super. 206, 216–217, 412 A.2d 886, 891 (1979), *rearg. den'd* (1980), (relying on *Willis* formula without reference to *Kichline*).

While *Kichline* controls when there are findings, no majority view has emerged concerning the effect of a missing finding. *Compare Commonwealth v. Barnett*, 484 Pa. 211, 216, 398 A.2d 1019, 1021 (1979) (plurality opinion by O'Brien, J., joined by Roberts and Manderino, JJ., holding that the lack of finding concerning an officer's testimony that defendant had tried to shoot him meant that suppression court did not believe officer) *with id.* (dissenting opinion by Larsen, J., joined by Nix, J., stating that *Commonwealth v. Willis*, *supra*, requires remand for a finding). The unsettled state of law in this area renders our review particularly difficult in this case, since the suppression judge did not make separate findings of fact and conclusions of law, but instead made a lengthy statement, in which observations concerning the evidence are scattered among discourses on the importance of adequate law enforcement and a variety of other topics. Consequently, we have trouble even finding the findings. In our review, however, we have given the Commonwealth the benefit of every favorable finding which could have been made and every favorable conclusion which could have been drawn. Even under this standard, we must reverse.

although the officer could not see what was being exchanged. The officer and his partner, both in uniform, pulled their marked police vehicle over to the curb, got out and approached appellant and his companion. The companion fled up the street, and the partner chased him. Appellant made a dash toward the entrance of a nearby bar. The testifying officer grabbed appellant, who then put his hand to his mouth. The officer grabbed appellant by the throat, until he spit out six small plastic packets, which were later determined by the crime lab to contain heroin. It was for possession of this heroin that appellant was convicted.

The Commonwealth makes three arguments supporting the search and seizure: (1) that assuming that the officer's grabbing appellant was an arrest, the officer had probable cause at that point to arrest appellant, and the search conducted by grabbing appellant's throat was thus incident to a lawful arrest; (2) that the officer's grabbing appellant was not an arrest, but merely an investigatory stop, and the search was one authorized in connection with an investigatory stop; and (3) there was in any event probable cause to arrest appellant after he spat out the packets.

Concerning probable cause, Judge (later President Judge) Jacobs stated for a majority of this court in *Commonwealth v. Santiago*, 220 Pa.Super. 111, 114, 283 A.2d 709, 711 (1971):

"In the present case, there are only three factors which could constitute probable cause: (1) appellant had a silver--foil packet and a dull--colored packet in his hand; (2) appellant had previously been arrested, although never convicted, for possession of narcotics; (3) appellant fled when he summoned by the police officer. The fact that a man, who had never found guilty of narcotics offense, is walking on a public street in broad daylight with two small packets in his hand would not lead to a conclusion that he was in possession of narcotics. Even to an experienced police officer, such circumstances would not be an indication that a crime was being committed. Any suspicions which would arise from these facts amount to a mere surmise."

Clearly the officer's information at the time of the search and seizure in this case was much less than the information found insufficient to establish probable cause in *Santiago*. The packets appellant had were not visible, as they were in *Santiago*. While the officer in *Santiago* knew only that Santiago had previously been arrested for narcotics possession, the officer in this case knew nothing at all of appellant's personal history. Appellant's flight alone, of course, is insufficient to establish probable cause. *Commonwealth v. Pegram*, 450 Pa. 590, 594, 301 A.2d 695, 697 (1973); *Commonwealth v. Santiago, supra*, 220 Pa.Super. at 115, 283 A.2d at 711.

The Commonwealth argues that there are three factors which in combination with appellant's flight established probable cause: (1) the police had an anonymous telephone tip that drug transactions were going on in the area; (2) the officer had in the same neighborhood made past arrests resulting in narcotics convictions; and (3) the officer saw appellant and another person unknown to him exchanging some unknown things. The first two of these factors are meaningless. Even if they have some slight tendency to show that illegal drugs were being sold in the area at that time, they provide no indication that appellant was more likely than any of the numerous other people in the area to be engaged in illegal drug transactions.[3] The third factor at least has some relationship to appellant, but has virtually no tendency to be incriminating since the officer could not see what was being exchanged. While it is true that the officer was experienced in narcotics detection, his observation of two unknown people exchanging unknown things in broad daylight on a city street provided even less reason for an inference of possession of narcotics than the observation by the experienced narcotics officer in *Santiago* of the silver—

---

**3.** Even if the anonymous telephone tip had been more specific, we would not accept the unwarranted conclusion of the court below that the tip was inherently more reliable because it was anonymous. *Betrand Appeal*, 451 Pa. 381, 387, 303 A.2d 486, 489 (1973); 1 W. LaFave, Search and Seizure, § 3.4, p. 597 & 1980 Pocket Part at 36, n. 46.

colored packet and the dull–colored packet carried by the defendant in that case. Since Santiago's flight plus his carrying the packet were not enough for probable cause, *a fortiori* appellant's flight plus his making the "exchange" were insufficient.[4]

■ The Commonwealth's second argument to justify the search and seizure is disposed of precisely by the following discussion from Justice Roberts' opinion in *Commonwealth v. Pegram, supra,* 450 Pa. at 594–95, 301 A.2d at 697–98:

"It is clear that probable cause did not exist for appellant's arrest. However, the Commonwealth attempts to justify the officers' actions in detaining and searching appellant as a 'stop and frisk' under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868 [, 20 L.Ed.2d 889] (1968) and *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889 [, 20 L.Ed.2d 917] (1968). Such an assertion is equally without merit.

In enunciating the test to be applied, the United States Supreme Court in *Terry* held that a 'stop and frisk' is constitutionally permissible *only '. . . where a police officer observes unusual conduct which leads him reasonably to conclude in the light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter*

---

**4.** Although appellant's brief characterizes the search as being accomplished "by choking," there is no contention that the search was unlawful because it was conducted with excessive force. *See generally* 2 W. LaFave, Search and Seizure, § 5.2(i), pp. 296–99 (indicating split of authority concerning how much force is excessive in "choking" cases). Appellant has, however, raised the issue of probable cause, which is required in addition to any requirement that the search be conducted without excessive force. *Id.* at 299–300 & n. 158. Especially pertinent to this case is LaFave's illustration, "that if a person were arrested for speeding and, while still in the car, took 'something' from a passenger and put it in his mouth, this would not justify a forcible search of that orifice because probable cause that the 'something' is drugs is lacking." *Id.* at 300 (footnote omitted). Similarly, there was no probable cause to search appellant's mouth, since the most the officer could infer appellant had put there was the unidentified "something" he had received in the "exchange."

*serves to dispel his reasonable fear for his own or others' safety, . . .' Terry,* supra [392 U.S.] at 30, 88 S.Ct. at 1884 (emphasis added). See also *Commonwealth v. Pollard,* 450 Pa. 138, 299 A.2d 233 (1973); *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970); *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969); *Commonwealth v. Clarke,* 219 Pa.Super. 340, 280 A.2d 662 (1971).

As this Court noted in *Commonwealth v. Berrios,* supra: '*A search on this ground is justified only when "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger" ': Terry v. Ohio,* supra [392 U.S.] at 27, 88 S.Ct. at 1883. *In other words, the sole justification for such a search is the protection of the police officer or others nearby. Moreover, the arresting officer must be able 'to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.' Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903 (1968). *Good faith on the part of the officer, in itself is not enough : Terry v. Ohio,* supra n. 3, 437 Pa. at 341, 263 A.2d at 343 (emphasis added)."

Here, even assuming that the officer had sufficient information for a *Terry* stop, there was nothing to indicate that appellant was armed and dangerous, and the record provides no support at all for a conclusion that the search by grabbing appellant's throat was in any way related to the safety of the officer or anyone else.[5]

 We also find no merit in the Commonwealth's last argument, that the search can be justified because it produced the heroin which clearly provided probable cause to arrest appellant after the search. As the leading treatise writer on the fourth amendment has observed:

"If the police conduct a warrantless search of a person and find evidence of crime in the course of that search and

5. The safety limitation on searches in connection with a *Terry* stop was recently reiterated by the U.S. Supreme Court in *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 246 (1979).

then place the individual under arrest, it is clear beyond question that this search may not be justified as being incident to the subsequent arrest if the arrest is in turn based upon the fruits of the prior search. Such bootstrapping would render the Fourth Amendment a nullity. As the Supreme Court emphasized in *Sibron v. New York* [392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)]: 'It is axiomatic that an incident search may not precede an arrest and serve as part of its justification.' "

2 W. LaFave, Search and Seizure, § 5.4(a), p. 336 (footnote omitted).[6]

Judgment of sentence reversed, and a new trial ordered.

---

6. Under the same reasoning, we must reject the Commonwealth's additional contention that the heroin was "in plain view" of the officer, since the heroin only came into view as a result of the illegal search.