## Commonwealth v. Dalessio

*William E. Master, James M. Bucci, Assistant District Attorneys,* for Commonwealth.
*Lawrence J. Hracho,* for defendant.

SAYLOR, *J.,* September 29, 1982—Defendant was found guilty at a trial by jury of possession of a Schedule II Controlled Substance, i.e. cocaine.[1] In his post verdict motions defendant contends that the suppression court erred in denying his omnibus pre-trial motion to suppress evidence.[2] We agree and grant defendant a new trial.

In passing judgment on the suppression court's denial of the motion to suppress, we are admonished by our Supreme Court that, "Our responsibility on review is to determine whether the record supports the factual findings of the [suppression court] and the legitimacy of the inferences and

---

1. 35 P.S. § 780-113(a) § 16.

2. Defendant also alleges that the trial court erred in its method of charging the jury on reasonable doubt. Because of our disposition of the suppression matter, we need not reach this issue.

legal conclusions drawn from those findings." Com. v. Kichline, 468 Pa. 265, 361 A. 2d 282, 290 (1976). The suppression court made its findings based on the Commonwealth's testimony of three police officers. No evidence was offered by defendant. A review of the record of the suppression hearing reveals the following pertinent facts:

On November 11, 1980, Sergeant Joseph F. Dougherty of the Reading Police received information from a confidential source that defendant, Richard L. Dalessio, and one Henry Heck had burglarized a number of private homes in the Reading area. He described in detail how these men, when "going out to do a job," drive in a peculiar circuitous manner in an apparent effort to keep from being followed. The informant also described several items, allegedly crime-related, that the men would carry in the car. Such articles included a lug wrench, spotlight, women's gloves, screwdrivers and flashlights. Sergeant Dougherty had worked with the informant infrequently over a period of three months, during which time he received no information leading to an arrest. The sergeant's testimony revealed that he had received inconclusive and at times inaccurate reports from the informant. In fact, Sergeant Dougherty admitted during direct examination that, "I only worked with him a short period of time; therefore I didn't have much of an opportunity to establish a great deal of credibility in his. . . . I didn't work with him very long."

Based on information received from the informant, on November 12, 1981, at 8:15 p.m., Sergeant Dougherty positioned himself near Mr. Heck's home at 1241 Oley Street, Reading, Berks County, Pa., where at 10:15 p.m. he saw Heck leave home in a jeep and, by following him to de-

fendant's residence at 721 North 10th Street in Reading, observed defendant enter the jeep. Heck and defendant then proceeded to drive in the peculiar manner described by the informant, and eventually managed to evade Sergeant Dougherty's surveillance, disappearing from view onto Plum Creek Road in Bern Township. Sergeant Dougherty then took up a stake-out position on Route 183.[3] On November 13, 1981, at 1:35 a.m., Sergeant Dougherty observed the jeep returning to Reading via Route 183 and radioed a request to stop the vehicle. Reading Police Officer Timothy Daley, responding to this request, stopped the vehicle in the 100 block of West Spring Street. Heck exited the jeep and proceeded toward the police car, but returned to the jeep upon the order of Officer Daley. Officer Daley ordered defendant out of the jeep and with his pistol drawn assisted in patting down Heck. Officer Gerald A. Boyer then arrived and, also with pistol drawn, handcuffed defendant and patted him down. Another officer, observing that defendant's "cheeks were puffed out," asked him what was wrong with his mouth, and defendant responded with a mumbling noise. At that time Officer Boyer grabbed defendant by his jaw and hair and caused defendant to spit out a baggie containing a white powdery substance.[4] Officer Boyer stated that he opened defendant's mouth because at one time in his ten-year career as a police officer he encountered a suspect who had attempted to

---

3. Route 183 is the main thoroughfare from Bern Township to Reading.

4. The substance was subsequently tested and identified as cocaine, a Schedule II Controlled Substance. See 35 P.S. 780-104(2)(i)4.

conceal a razor blade in his mouth. Defendant and Heck were then transported to police headquarters at City Hall in Reading.

It was contended by defendant that there was no probable cause for an arrest or a search at the time he was handcuffed and his mouth was forced open and, therefore, the plastic packet and its contents should be suppressed. Indeed, the Commonwealth did not seriously argue to the contrary and applied the thrust of its efforts at the hearing and in argument in a direction of alternative Fourth Amendment justification for the actions of the officers. We agree that there was insufficient probable cause to arrest and search defendant.[5] Probable cause sufficient to arrest a suspect depends on whether the facts and circumstances within the knowledge of the arresting officers and of which they had reasonable trustworthy information were sufficient to warrant a prudent person in believing that the suspect was committing or had committed a crime: Beck v. Ohio, 379 U.S. 89, (1964); Com. v. Young,

---

5. We conclude an arrest and search did occur when, in compliance with an order to stop the suspects and take them into City Hall, the officers with pistols drawn handcuffed defendant and forced his mouth open. In Com. v. Bosurgi, 411 Pa. 56, 190 A. 2d 304, 311 (1963), our Supreme Court defined an arrest as any act that indicates an intention to take an individual into custody and that subjects him to the actual will and control of the person making the arrest. While the drawing of pistols by the officers does not necessarily turn their actions into an arrest, Com. v. Ferraro, 237 Pa. Superior Ct. 268, 352 A. 2d 548, 550 (1975), it has been held that a defendant is arrested when he is handcuffed: Com. v. Roscioli, 240 Pa. Superior Ct. 135, 361 A. 2d 834 (1976). The exact point, if any, at which the officers' actions crystallized into a bona fide arrest or search (as opposed to a mere stop and frisk) is not critical to our analysis because we find insufficient justification for such actions regardless of how they are classified.

222 Pa. Superior Ct. 355, 294 A. 2d 785 (1972).[6] While police may base their determination of probable cause on hearsay information, Draper v. United States, 358 U.S. 307, (1959), such hearsay must be proven to have emanated from a reliable source. The information source must meet the Aguilar-Spinelli two-pronged reliability test. The officer must know the underlying circumstances whereby the informer concluded that the suspect participated in the crime. Further, the officer must have some reasonable basis for determining that the source of the tip was reliable.[7] Independently obtained corroborative detail may be used to satisfy an officer as to the underlying circumstances from which the informant was able to gather his information. This is the theory embraced by the United States Supreme Court in Draper v. United States, supra. Such detail, it could be argued, is present in the case at bar. Lacking in our case, however, is proof of what basis the officers had for concluding that the informer himself was reliable. Far from providing such proof the officer's testimony tended to show that the informant had proven to be unreliable in the past.

The Supreme Court has consistently maintained that the reliability of the informant is a necessary factor in the hearsay-based probable cause formula: Whitely v. Warden, 401 U.S. 569, (1971). Therefore, the absence of proof of such reliability in our case must cause any argument for the existence of probable cause to fail.

---

6. The same standards for judging probable cause for the arrest are applicable to the search as well. Com. v. Milliken, 450 Pa. 310, 300 A. 2d 78 (1973).

7. Aguilar v. Texas, 387 U.S. 108, (1964); Spinelli v. United States, 393 U.S. 410 (1969).

The Commonwealth maintains that although the information possessed by the officers at the time the evidence was discovered will not support probable cause, it does rise to a probative level sufficient for a finding of reasonable suspicion. The Commonwealth contends the actions of the officers can therefore be justified as being a Terry "stop and frisk." Terry v. Ohio, 392 U.S. (1968). " 'A stop for investigatory purposes in this context is justified only if the police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.' " Com. v. Williams, 287 Pa. Superior Ct. 19, 429 A. 2d 698, 702, 703 (1981), quoting Com. v. Jones, 474 Pa. 364, 372, 378 A. 2d 835, 840 (1977).

Assuming, arguendo, that the officers had the requisite suspicion and were therefore justified in stopping the men, we must further inquire as to the justification for their subsequent actions. The United States Supreme Court has narrowly confined the scope and legitimate purpose of Terry frisks. The justification for the search in Terry was predicated upon finding some reason upon which the officer could conclude that the individual may have been a threat. Further, the officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. 40, (1968). In our case, Officer Boyer could only point to a rumor that indicated that defendant might have carried a firearm at some previous time. This court finds that such testimony falls well short of the Sibron requirement that particular facts be articulated to support a reasonable inference of danger.

Regardless of the reasonableness of Officer Boyer's belief that defendant was armed, by forcibly opening defendant's mouth after he was hand-

cuffed, Officer Boyer went far beyond the allowable scope of a Terry pat down. The only legitimate goal that the officer could have had while searching defendant was the discovery of weapons of assault that might have been concealed in defendant's outer clothing. Officer Boyer's testimony concerning a lone encounter in his ten-year career with a suspect who carried a razor blade in his mouth does not persuade this court that a forceful search of defendant's mouth after he was handcuffed was necessary for safety. Our Superior Court recently stressed this safety limitation by refusing to grant its approval of a search similar to the one in our case. In Com. v. Hunt, 280 Pa. Superior Ct. 205, 421 A. 2d 684 (1980), the police grabbed defendant's throat until he spit out plastic packets containing narcotics, whereupon the court declared, "There was nothing to indicate that appellant was armed and dangerous and the record provides no support at all for a conclusion that the search by grabbing appellant's throat was in any way related to the safety of the officer or anyone else." Hunt, supra, 421 A. 2d 684, 687.[8] We hold that the plastic packet and its contents were obtained in violation of defendant's Fourth Amendment rights[9] and should not have been and may not now be used as evidence against him at trial.

Accordingly, we enter the following

## ORDER

September 29, 1982, upon consideration of de-

---

8. The Superior Court also noted that the safety limitation on Terry based searches was reiteratèd by the United States Supreme Court in Ybarra v. Illinois, 444 U.S. 85, 10 S.Ct. 338, 62 L.Ed. 2d 238, 246 (1979).

9. U.S.C.A., Amendment IV.

fendant's post trial motions for a new trial and/or arrest of judgment and the foregoing opinion, defendant's motion for a new trial is granted and his motion for arrest of judgment is denied.