580 So.2d 162 (1991)
In the INTEREST OF J.H., a Child.
No. 89-3220.
District Court of Appeal of Florida, Fourth District.
February 13, 1991.
*163 Richard L. Jorandby, Public Defender, and Cherry Grant, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
The dispositive issue of this appeal is whether appellant, a juvenile, intelligently waived her right to have counsel present at her motion to suppress, adjudicatory hearing and "no contest" plea by executing the following form which apparently is used in all Broward County Courts:
TO THE CLERK OF THE CIRCUIT COURT
This is to certify that I hereby consent to having ALAN LEVINE appointed by the Office of the Public Defender to act in my defense.
I acknowledge that I have been advised and understand that ALAN LEVINE is a certified law student and has complied with Chapter 11 of the Rules of the Supreme Court Regulating the Florida Bar and is certified by the Supreme Court of the State of Florida and is supervised in this case by an attorney on the Staff of the Public Defender's Office.
DATED this 7th day of December, 1989.
(signed J.H.)
APPROVAL OF APPEARANCE
As Assistant Public Defender and as the supervising Attorney, I hereby give my approval of his/her appearance in the above cited matter.
 (initialed)
 Assistant Public Defender
The form was filed in the courtroom on the day the certified legal intern handled appellant's motion to suppress, adjudicatory hearing and "no contest" plea, all of which events took place without the presence of the supervising attorney who signed the motion to suppress.
The Broward County form does not state that appellant has a right to have a "supervising attorney personally present when required by the trial judge." Fla.Bar R. Governing the Law School Civil and Criminal Practice Program, Rule 11-1.2(a). Nor was appellant advised of that right at the time she entered her plea. We hold that without such information appellant could not have intelligently waived her right to be represented by a lawyer.
Accordingly, we reverse and remand with direction to the trial court to conduct a new adjudicatory hearing after appellant is given the opportunity to withdraw her plea. Nevertheless, we certify the following question as being one of great public importance:
Does the consent form used in Broward County's courts constitute a waiver of the indigent's right to have an attorney present at a hearing on motion to suppress and adjudication?
LETTS, J., concurs.
GLICKSTEIN, J., concurs specially with opinion.
GARRETT, J., concurs specially with opinion.
*164 GLICKSTEIN, Judge, concurring specially.
I agree this is a reversal and with the certification, but disagree upon the basis for the reversal.
The assistant public defender, to her credit, vigorously and successfully argued to the satisfaction of the majority  that waiver did not occur. I disagree with her position on that first point.
Nevertheless, I would reverse because of the analysis of the Third District Court of Appeal in a factually similar case, Johnson v. State, 565 So.2d 413, 414 (Fla. 3d DCA 1990), wherein the panel said:
We agree with the defendant that an officer's observation of someone handing an unknown object to another and taking back money, without more, does not establish probable cause for an arrest or search for the sale of narcotics. See United States v. Green, 670 F.2d 1148 (D.C. Cir.1981); Commonwealth v. Hunt, 280 Pa.Super. 205, 421 A.2d 684 (1980).
All the cases cited by the State included additional factors such as packaging distinctly common in the illegal drugs trade, State v. Jordan, 458 So.2d 830 (Fla. 3d DCA 1984); a tip from a3 reliable informant, State v. Maya, 529 So.2d 1282 (Fla. 3d DCA 1988); or a plain view of the contraband after the initial reasonable suspicion stop in an area known for drug transactions. Johnson v. State, 540 So.2d 932 (Fla. 4th DCA 1989).
GARRETT, Judge, concurring specially.
I concur that appellant did not intelligently waive her right to an attorney. However, I write to address the other issue. Did the police have probable cause to detain appellant and conduct a search of her person?
Two Broward County Sheriff's Officers, using binoculars, set up a surveillance in a predominately black neighborhood. They positioned themselves across the street from an apartment complex where there had been "a lot of drug activity." During the fifteen minutes that they were there, the officers observed what they thought were two separate drug transactions. The first transaction involved an unidentified male and another person. Five minutes later, the officers watched two white females drive up and park. Appellant, who had been across the street, walked over to the car and spoke to the passenger. One of the officers recognized appellant.
Appellant reached into her shorts and pulled something out of the crotch area. Appellant and the female passenger then walked between two apartment buildings. The officers observed appellant's open palm and some type of hand to hand exchange between the two women, although the officers could not observe what exactly was exchanged. The white female then left and appellant reached back into the crotch area of her shorts and also left.
The officers then radioed in a description of appellant and the unidentified man they had observed earlier, intending to detain both of them. However, appellant walked away from the area before the uniformed police officer arrived. The officers remained in the area for another half-hour to forty-five minutes, until they spotted appellant riding in a car. Appellant appeared to be "ducking down," but the officers could observe and identify her hat and clothing. The officers followed the car to a convenience store. Appellant got out of the car and went into the store. An officer went into the store and brought her back outside. At this point it is unclear whether appellant was in fact under arrest. When one of the officers was asked this very question, his responses ranged from "in a sense" to "she was not free to leave." Although appellant was not told she was under arrest, she was asked to "take the cocaine out of her crotch area." Appellant denied hiding anything, but "she began moving something around with her thumb ... along her crotch area." Appellant was then searched by a female officer. The search revealed a white, plastic baggie that contained seventeen crack cocaine rocks.
Appellant filed a motion to suppress the evidence alleging: (1) that the police lacked founded suspicion to trigger temporary detention of her, and (2) that even if there was founded suspicion, the subsequent full *165 body search was unlawfully intrusive and beyond the scope of an investigative stop. The motion was heard at trial and denied.
I acknowledge that Johnson v. State, 565 So.2d 413 (Fla. 3d DCA 1990), states:
[A]n officer's observations of someone handling an unknown object to another and taking back money, without more, does not establish probable cause for an arrest or search for the sale of [drugs].
Id. at 414. However, the cases relied upon by the Johnson court are ten years old. This and like issues should be viewed from the vantage point of sitting in the 90's. Even from the windows of an ivory tower an appellate judge can see what is happening today on the streets below.
Each year millions of dollars are spent to educate and train police officers to fight the "war on drugs." The result is that many members of the police departments and law enforcement agencies in Florida are experts in the detection of illicit drugs. As experts the police officers are allowed to give opinion evidence. See § 90.702, Fla. Stat. (1989). Although the appellate courts of Florida are on the cutting edge in the recognition of new areas of expert opinion evidence,[1] they continue to struggle in drug cases when asked to consider a police officer's expert opinion as to what the trained and experienced officer saw through his or her eyes.
The state's only witness, Detective Menghi, an eight-year veteran police officer with Broward Sheriff's Office, testified:
Yeah, we detained her because it was obvious  I mean, we've conducted several surveillances [with binoculars], and based on our experience and training and classes that we've taken, our instructors have taught us that if we see what is indicative of a street-level drug sales, that under the law we have the right to detain that person and conduct a search and make an arrest.
The prosecutor did not ask any other questions about the detective's training, experience or opinion. Nevertheless, the detective's testimony established probable cause to believe that appellant had committed a crime. "[P]robable cause is a flexible, common sense standard. It merely requires that the facts available to the officer would `warrant a man of reasonable caution in the belief,' Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)," that a crime occurred. Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 514 (1983). I concede that the state's direct examination of the detective is not a model as to how to qualify or examine an expert witness. But, the probable cause standard is "weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id.
Appellate opinions should shed light on issues, not act as blinders. I respectfully suggest that in today's society where our citizens daily watch television accounts of actual and staged drug transactions, it may not require a special knowledge, skill, experience, or training to conclude a common street-level drug sale has occurred. See § 90.701(1)-(2), Fla. Stat. (1989). Any intelligent person with a limited degree of knowledge about how drug transactions occur could have reached the same conclusion as did the detective. See Peacock v. State, 160 So.2d 541 (Fla. 1st DCA), cert. denied, 168 So.2d 148 (Fla. 1964), cert. denied, 381 U.S. 916, 85 S.Ct. 1541, 14 L.Ed.2d 436 (1965). He or she would not have to be another Sherlock Holmes to form the opinion that a drug transaction "went down" and that the seller "stashed" the "goods" in the crotch area inside her shorts. In any event, the detective's observations, as understood by other similarly trained police officers, established probable cause to believe that appellant conducted a tragically common street-level drug sale. See P.L.R. v. State, 455 So.2d 363 (Fla. 1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985).
NOTES
[1] Post traumic stress disorder and battered wife syndrome are two examples of new areas of expert opinion evidence that come to mind.