595 A.2d 1258

**COMMONWEALTH of Pennsylvania**

v.

**William R. FRANK, Appellant.**

Superior Court of Pennsylvania.

Argued May 16, 1991.

Filed Aug. 13, 1991.

Frank G. Verterano, New Castle, for appellant.

Annette Hutchison, Asst. Dist. Atty., New Castle, for the Com., appellee.

Before CAVANAUGH, DEL SOLE and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from a judgment of sentence entered by the Court of Common Pleas of Lawrence County on October 19, 1990. We affirm.

Appellant was charged with one count of possession of a controlled substance[1] and one count of possession of drug paraphernalia.[2] Before trial, appellant filed an omnibus

1. 35 P.S. § 780–113(a)(16).
2. *Id.* § 780–113(a)(32).

pretrial motion to suppress evidence of crack cocaine found on his person at the time of arrest. Appellant argued that the police were unjustified in stopping his automobile and that the search of his person was excessive. The suppression judge denied this motion on July 13, 1989 and appellant proceeded to trial. After a jury found appellant guilty on the above-referenced charges, post-verdict motions were filed and denied. This timely appeal followed. Appellant raises three issues for our review:

1. did the lower court commit legal error in concluding that the officers, prior to their seizure, search and arrest of the defendant, had probable cause to believe that he had committed a crime in their presence;

2. were the officers possessed of sufficient articulated facts to give rise to a reasonable belief that criminal activity was afoot;

3. assuming, *arguendo*, that the officers had a basis for an investigatory stop, did their conduct exceed the intrusion on personal liberty allowable in such circumstances?

In reviewing an order denying a motion to suppress evidence we must determine whether the factual findings of the lower court are supported by the evidence of record. *Commonwealth v. Espada*, 364 Pa.Super. 604, 607, 528 A.2d 968, 969 (1987). In making this determination, we may only consider the evidence of the Commonwealth witnesses and so much of the witnesses for the defendant as, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* If the evidence supports the findings of the lower court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are in error. *Id.*

In light of this standard of review and our independent inspection of the record, we adopt the following findings of fact as enunciated by the suppression court:

On June 15, 1989, Trooper William Chiappini of the Pennsylvania State Police and Officer Thomas Macri of the New Castle Police Department were engaged in an

undercover surveillance operation involving the Westview Terrace housing development in New Castle, Pennsylvania. The Westview Terrace housing development is located in an area of known drug activity.

At approximately 12:24 p.m., Trooper Chiappini observed the [appellant's] vehicle, a white 1978 Jaguar, being operated onto Sankey Street from North Street in the city of New Castle. Both Sankey and North Streets are generally situated within the Westview Terrace area of the city. The officers then observed the [appellant], a middle-aged, white male to be the driver of the vehicle.

After turning onto Sankey Street, the [appellant] was signaled to stop his vehicle by one William Payne, a man whom Trooper Chiappini knew to be a crack cocaine dealer. Payne entered the passenger side of the [appellant's] vehicle and both Payne and the [appellant] then proceeded to a parking lot located adjacent to Sankey Street in the Westview Terrace housing development. There, three males approached the driver's side of the [appellant's] vehicle.

From their position, the officers observed the other males and the [appellant] engage in a conversation and then proceed to conduct an exchange. They could not, however, identify the items which were transferred between the parties.

Remaining in the parking lot area of Westview Terrace for approximately one minute, the [appellant] and Payne left in the [appellant's] vehicle and proceeded onto Sankey Street. They then drove to the area where Payne had previously entered the [appellant's] vehicle and Payne then proceeded to exit the [appellant's] vehicle. The [appellant] then proceeded to West Washington Street.

At this juncture in the scenario, the officers began to follow the [appellant] in an unmarked police vehicle. In an attempt to stop the [appellant], Trooper Chiappini drove his vehicle to the driver's side of the Frank vehicle, and Officer Macri (who was seated on the passenger's side of the police vehicle) then lowered the side window of

the vehicle and exhibited his police badge to the [appellant]. The [appellant] thereupon operated his vehicle over to the side of the road, but then quickly began to drive away from the scene.

The officers pursued the [appellant] and subsequently succeeded in stopping his vehicle. Chiappini and Macri then exited the police vehicle, and with their weapons drawn, approached the [appellant's] vehicle. Trooper Chiappini opened the driver's side door of the [appellant's] vehicle and ordered the [appellant] to exit his vehicle. The [appellant] initially declined to comply with the request of Trooper Chiappini because of the fortuitous arrival of a television camera crew at the scene. Trooper Chiappini directed the camera crew to leave the area and the camera crew complied with his request. Officer Macri then pulled the [appellant] from this vehicle. Officer Macri immediately arrested the [appellant] and proceeded to cuff his hands behind his back.

The [appellant] was placed against the hood of the police vehicle and his person was then searched by Trooper Chiappini. The [appellant] voluntarily told the officer where the crack cocaine had been placed in his clothing. Trooper Chiappini then found a rock of crack cocaine and a glass pipe stem in the left, rear pocket of the [appellant's] trousers. The [appellant] was then given his *Miranda* rights, and placed inside a city police vehicle which had arrived at the scene.

Suppression Court opinion 3/15/90 at 1–4.

Appellant argues that the trial court erred in failing to suppress the evidence of the crack cocaine found when the police officer searched him. Appellant argues that the police officers had no probable cause to arrest or reasonable suspicion to stop appellant to investigate under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that the subsequent search of appellant's person exceeded any search permitted by *Terry, supra*. However, because we find that probable cause to arrest does exist, we only address appellant's first argument.

In order for a warrantless search to be lawful it must have been made pursuant to a lawful arrest. *Commonwealth v. Santiago*, 220 Pa.Super. 111, 114, 283 A.2d 709, 711 (1971). An arrest occurs with any act that indicates an intention to take a person into custody and subject him to actual control and will of the person making the arrest. *Commonwealth v. Bosurgi*, 411 Pa. 56, 68, 190 A.2d 304, 311 (1963). In this case, the police officers initially handcuffed appellant when they apprehended him. At that point an arrest was made because appellant reasonably believed that he was not free to leave, and, actually was physically restrained by the use of the handcuffs. Moreover, it was after appellant had been arrested that the warrantless search of his person ensued.[3] Therefore, it is incumbent on us to determine whether the police, at that time, had probable cause to arrest appellant.

The established test for determining whether an officer had sufficient probable cause to legally justify a warrantless arrest involves looking at the facts and circumstances confronting the officer at the time of arrest. *Commonwealth v. Chase*, 394 Pa.Super. 168, 171, 575 A.2d 574, 575 (1990).

A police officer may arrest without a warrant where there is probable cause to believe that a felony has been committed and that the arrestee is the felon. Probable cause exists where the facts and circumstances within the knowledge of the officer are reasonably trustworthy and sufficient to warrant a person of reasonable caution in believing that the arrestee has committed the offense. *Id., citing Commonwealth v. Travaglia*, 502 Pa. 474, 484, 467 A.2d 288, 292 (1983). Furthermore, the standard of probable cause must be applied to the totality of the circumstances facing the police. Thus, "when we examine a particular situation to determine if probable cause exists, we consider all factors and their total effect, and do not concentrate on each individual element.... We

---

**3.** In fact, the Commonwealth concedes in its brief that the police conduct in this case constituted an arrest.

also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might.... Finally, we must remember that in dealing with questions of probable cause, we are *not* dealing in certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond a reasonable doubt' standard which we apply in determining guilt or innocence at trial." *Chase, supra,* 394 Pa.Super. at 172, 575 A.2d at 575–76 (emphasis in original).

■ Applying our standard of review to this case, we find sufficient probable cause to arrest appellant. Initially, we note that Officers Chiappini and Macri were surveying an area with a high concentration of drug activity. During this period of surveillance, they observed appellant drive into the area and stop for a known drug dealer. The drug dealer entered the auto and appellant drove to another area where they met three other men. Appellant exchanged unknown materials with one of the men and then drove off. He subsequently drove the drug dealer back to the place where he had entered and appellant drove off. The arresting officers followed appellant and later pulled alongside his automobile and motioned him to the side of the road.

At this point, we find that the arresting officers had reasonable cause to stop appellant and investigate the episode at Westview Terrace. A police officer must rely on specific and articulable facts which, if taken together with rational inferences from those facts, reasonably warrant a belief that criminal activity is afoot before an initial investigatory stop can be made. *Commonwealth v. Martinez,* 403 Pa.Super. 125, 127, 588 A.2d 513, 514 (1991). Officers Chiappini and Macri were justified in suspecting that appellant engaged in a drug deal with a known drug dealer and the three other unknown men. In particular, we note that they witnessed appellant enter an area known for drug dealing, allow a known drug dealer to enter his car, and then proceed to make a quick exchange with the other

individuals. While the officers did not observe the exact items being exchanged, common sense and the experience of the police officers dictates that the transaction was in all likelihood drug related. On that basis, the officers had reasonable suspicion to stop appellant and investigate the incident further.

Our analysis, however, must go one step further. For while there was reasonable suspicion to conduct a *Terry* stop, in order to effectuate an arrest, that suspicion must rise to the level of probable cause. After the police motioned appellant to pull off the road, he complied. When the police left their vehicle and began to approach appellant's automobile, appellant fled in his vehicle. In response, the police radioed for help, subsequently caught appellant and placed him in handcuffs.

Flight, in and of itself, cannot constitute probable cause to arrest. *Martinez, supra*, 403 Pa.Super. at 127, 588 A.2d at 514. It is equally true, however, that flight, coupled with additional facts which point to a suspect's guilt may establish probable cause to arrest. *Commonwealth v. Woodson*, 342 Pa.Super. 392, 395, 493 A.2d 78, 80 (1985). Here, the officers observed a potential drug transaction and attempted to investigate further. However, in exacting the *Terry* stop, they were met with appellant's attempt to abscond. Such conduct was sufficient to find probable cause to arrest.

Various jurisdictions have found probable cause to arrest in similar situations. In *State v. Bumpus*, — Iowa —, 459 N.W.2d 619 (1990), the supreme court of Iowa arrived at a similar result when faced with a comparable set of facts. In that case, Des Moines police officers were patrolling near a lounge which was a notorious site for drug transactions. The officers recognized two men who were making an exchange of items which they could not see. Based on their past experience with the precise locations, the nature of the actions of the suspects, the notoriety of the lounge and the lateness of the hour, the officers attempted to investigate. *Id.* at —, 459 N.W.2d at 621.

The appellant and his accomplice then fled. The officers pursued them further. One of the officers seized appellant and arrested him for interference with official acts. *Id.*

The Iowa Supreme Court found probable cause existed to arrest the appellant in *Bumpus* and therefore it was proper to conduct a search incident to the arrest. The Iowa court conceded that while none of the factors cited for the arrest, standing alone, would constitute probable cause, the several factors gave rise to probable cause when part of a pattern which indicates unlawful activity. *Id.* at ——, 459 N.W.2d at 624. The Iowa court also held that once a police officer has the requisite suspicion to make a *Terry* stop, and the suspect takes flight when approached by the officers, the preexisting suspicion may rise to the requisite Fourth Amendment level of probable cause, thereby justifying the arrest of the suspect. We find this rationale compelling.

Instantly, Officer Chiappini testified that the Westview Terrace housing development was an area known for drug related activity. The officers observed appellant associate with a known drug dealer and subsequently enter into an exchange with unknown individuals, thus indicating behavior consistent with drug transactions. The possession of reasonable suspicion sufficient to investigate, coupled with appellant's subsequent flight elevated their suspicion to probable cause to arrest, consistent with the Fourth amendment of the United States Constitution.

Appellant directs us to two decisions of this court where probable cause to arrest did not exist. In *Commonwealth v. Hunt*, 280 Pa.Super. 205, 421 A.2d 684 (1980), a police officer testified that he and his partner drove to an area in Pittsburgh to investigate an anonymous tip that several people were selling illicit drugs in that location. The officers had previously made narcotics arrests in that area. *Id.*, 280 Pa.Superior Ct. at 208, 421 A.2d at 685. The police officers next observed two unknown individuals making an exchange. Based on this information, the officers proceeded to investigate the incident and the appellant, Hunt, fled. One of the officers began to chase him. When he caught

appellant, he grabbed him by the throat until appellant spit out six packets of heroin. *Id.*, 280 Pa.Superior Ct. at 209, 421 A.2d at 685–86.

A panel of this court determined that the police lacked probable cause to arrest Hunt. The *Hunt* panel relied upon this court's holding in *Commonwealth v. Santiago, supra,* finding that while the officer was experienced in narcotics detection, his observation of two unknown people exchanging unknown things was insufficient to establish probable cause. *Hunt, supra,* 280 Pa.Super. at 210, 421 A.2d at 686.

In *Santiago, supra,* this court found that probable cause did not exist to arrest appellant. In that case, the appellant, Santiago, was seen by a police officer carrying two small packets. The police officer knew that the appellant had been arrested previously on narcotics charges. When the officer called the appellant and told him to come over to the patrol car, appellant turned and ran. The police officer chased him and caught him as he was climbing over a fence. As the officer pulled him off, a silver foiled packet containing heroin fell from his hand. The officer subsequently arrested the appellant. *Santiago, supra,* 220 Pa.Super. at 113, 283 A.2d at 710.

The *Santiago* court found no probable cause to arrest because the police officer had no reasonable suspicion that the appellant was engaged in criminal activity. As stated:

> The fact that a man, who had never been found guilty of a narcotics offense, is walking on a public street in broad daylight with two small plastic packets in his hand would not lead to the conclusion that he was in possession of narcotics. Even to an experienced officer, such circumstances would not be an indication that a crime was being committed. Any suspicions which would arise from these facts amount to a mere surmise.

*Id.*, 220 Pa.Superior Ct. at 114, 283 A.2d at 711.

We find these cases, however, inapposite to the instant case. *Hunt, supra,* lacks one essential fact which we find present here. That case involved the arrest of an appellant with no individualized suspicion that he or his cohort were

involved in drug related activity. In the present case, the police officers observed a known drug dealer enter appellant's automobile which he then drove to meet three unknown men to conduct an exchange. In *Santiago, supra,* the police merely observed the appellant walking along a public way carrying packets containing unknown items. In the present case, appellant was present in an area known for drug trafficking, was seen associating with a known drug dealer and was conducting an exchange indicative of a drug transaction.

Moreover, this court has taken notice of the pervasiveness and dangerousness of drug related activity within this Commonwealth in recent years. *Cf. Commonwealth v. Patterson,* 405 Pa.Super. 17, 591 A.2d 1075 (1991) (court takes judicial notice of the fact that drug dealers are likely to be armed and dangerous). We cannot expect that our police officers will stand by and observe what in all likelihood is a drug transaction, and be powerless to eradicate the illegal activity. In other words, we cannot deprive police officers the use of their common sense, experience and personal observations to properly assess and evaluate situations that give rise to reasonable suspicion to investigate, and probable cause to arrest. We must caution though that we find sufficient probable cause to arrest based only on the totality of the circumstances presented here. Since sufficient probable cause exists, the police were entitled to conduct a search of appellant because of the always present danger in an arrest situation that the arrestee may seek to use a weapon or to conceal or destroy evidence. *Commonwealth v. Tann,* 500 Pa. 593, 598 n. 10, 459 A.2d 322, 325 n. 10 (1983). Accordingly, judgment of sentence is affirmed.

Judgment of sentence affirmed.