WOLF, J.
 

 Appellant challenges his convictions for armed robbery with a firearm and attempted first-degree murder with a firearm. He raises one issue: whether appellant was denied his Sixth Amendment right to assistance of counsel where he was represented in part by a certified legal intern without his written consent. The trial court determined after an evidentiary hearing that appellant was fully aware he was being represented by an intern and had, in fact, executed the required form. We, therefore, affirm.
 

 On March 6, 2008, the State filed an information charging appellant with armed robbery with a firearm and attempted first-degree murder with a firearm. The information alleged that the firearm was possessed and discharged, causing death or great bodily harm. A certified legal intern participated in the motions and trial of the case including the following relevant portions: (1) argument of appellant’s sixth motion in limine; (2) voir dire of the jury pool; (3) opening and closing argument; (4) cross examination of two witnesses; and (5) arguments in allocution of appellant’s sentence. No consent for representation by a certified legal intern was found in the court file.
 

 After deliberation, the jury returned verdicts finding appellant guilty of robbery while discharging a firearm and attempted first-degree murder while discharging a firearm. As a result, on August 18, 2008, appellant was sentenced to concurrent life sentences with a 25-year minimum mandatory applicable. Appellant’s notice of appeal was timely filed.
 

 On March 13, 2009, after the filing of appellant’s initial brief, the State filed a motion to relinquish jurisdiction for the purpose of reconstructing the record concerning appellant’s consent to representation by a certified legal intern. This court granted the motion and the trial court conducted a hearing on the issue at which the following evidence was presented:
 

 Testimony of Assistant Public Defender Mary Hickson
 

 Hickson explained that she was the lead attorney on appellant’s case. She was present at every stage of appellant’s case. When Casey Bryant, the certified legal intern, assisted her with a case, she would go over the consent form with the client. Bryant would then make a copy of the form and he would file the original with
 
 *944
 
 the clerk and keep a copy in their file. Hickson had a specific memory of going over the certified legal intern consent form with appellant, and she stated appellant and Bryant would have signed the form at this time. Hickson testified it is her practice to make sure that anybody represented by a certified legal intern understands the extent of such representation. Hick-son recalled appellant never expressed any concerns about being represented by an intern and he was happy to have additional people working on his case. Hickson stated appellant and Bryant got along very well. Hickson explained she never had any concerns that appellant was unaware or upset about the fact that a certified legal intern was working on his case. She was very satisfied with Bryant’s performance. Hickson testified she remembered Bryant approaching the clerk before trial to make sure that the consent form was in the file. Hickson recalled the clerk telling Bryant that she believed the form was underneath the paper. Hickson recalled that this particular clerk was being trained at the time. Hickson explained that, during that same time period, in another case which she handled, a filed consent form did not make it into that clerk’s file. Hickson presented a copy of the standard waiver form and the form was admitted into evidence. The waiver form read in pertinent part:
 

 I, the Defendant herein, having been advised of the availability of the services of a student intern to assist the office of the Public Defender for the Fourth Judicial Circuit in the defense of my case, do hereby request that an intern or interns be assigned to my case and consent that an intern may appear on my behalf in any court as directed by the Public Defender or his Assistants.
 

 Following Hickson’s testimony, the State played a phone call appellant made from jail and Hickson identified appellant as the speaker on the phone call. The pertinent portion played as follows:
 

 I had two of them in here today and there’s another one. (Inaudible.) I got three lawyers fighting for me. And right now they’re suppose to (inaudible). They’re interns, so they’re trying to make a name for themselves (inaudible).
 

 Testimony of Casey Bryant, the certified legal intern
 

 Bryant testified that he dealt with appellant for five or six months and met with him 30-40 times. He testified appellant knew that he was an intern based on discussions they had and every time he represented someone he executed a consent form. Bryant stated appellant never expressed any concern about Bryant being an intern. Appellant stated Hickson supervised him at all times. After sentencing, appellant showed Bryant a list of issues he wanted to appeal. The fact that Bryant was an intern was on that list; however, appellant did not act shocked that Bryant was an intern.
 

 Testimony of Appellant
 

 Appellant testified he did not sign a consent form. Appellant could not say if he had seen the form before. He testified he was not aware that Bryant was an intern. He conceded he met with Bryant many times but stated his status as an intern was never mentioned to him. Appellant testified he was only referring to Michael Kalil on the phone call. When asked if he recalled saying “they are interns,” appellant replied: “I might have said that, but if you listen to how I talk, I have a weird way of talking. If you listen to the whole conversation, my slang is different than everybody else’s.”
 

 At the close of the hearing, the trial court made the following findings:
 

 
 *945
 
 THE COURT: Let me quickly note just for record purposes that I certainly remember Mr. Reigelsperger and I remember the trial. And I’m sure that nobody on the jury had seen somebody shot in the back of the head before because I certainly hadn’t either.
 

 So, I absolutely remember Mr. Reigel-sperger, and I remember Mr. Bryant trying this case. And I want it clear for the record that I knew Mr. Bryant was a legal intern. And I also think that if you look at the transcripts of the trial at the conclusion of the State’s case, I specifically asked Mr. Reigelsperger if he was satisfied with the representation of counsel, and everything that happened at that point, and he acknowledged that he had [sic].
 

 I find this testimony today to be utterly incredible. Under the circumstances of all this, I can’t account for where the form is because we are meticulous, particularly in this division. And the reason for that is, I happen to be a professor at the Florida Coastal School of Law and I am well versed with the requirements of interns. Mr. Bryant was a student out there at the time, and I knew it, and I knew it when he was in this division. It is completely and utterly implausible that Mr. Reigelsperger didn’t know that Mr. Bryant was a legal intern because everybody else in the world certainly did.
 

 Florida Bar Rule 11-1.2(b) authorizes a legal intern to represent a defendant and provides in pertinent part:
 

 (b) Appearance in Court or Administrative Proceedings. An eligible law student may appear in any court or before any administrative tribunal in this state on behalf of any indigent person if the person on whose behalf the student is appearing has indicated in writing consent to that appearance and the supervising lawyer has also indicated in writing approval of that appearance. In those cases in which the indigent person has a right to appointed counsel, the supervising attorney shall be personally present at all critical stages of the proceeding. In all cases, the supervising attorney shall be personally present when required by the court or administrative tribunal who shall determine the extent of the eligible law student’s participation in the proceeding.
 

 Generally, Florida courts addressing the issue have found that the failure to obtain and file a written consent form verifying a defendant’s acceptance of representation requires reversal.
 
 C.B. v. State,
 
 973 So.2d 1285 (Fla. 4th DCA 2008);
 
 L.R. v. State,
 
 698 So.2d 915, 916 (Fla. 4th DCA 1997) (reversing an adjudication because the written consent form contained the wrong name of the certified legal intern);
 
 M.C. v. State,
 
 687 So.2d 832, 833 (Fla. 4th DCA 1996) (reversing an adjudication because the juvenile did not execute a written waiver of his right to be represented by an attorney);
 
 A.D. v. State,
 
 740 So.2d 565 (Fla. 5th DCA 1999) (reversing disposition where A.D. was represented by a certified legal intern without supervision and the record was silent as to whether appellant had consented to the representation);
 
 R.M. v. State,
 
 664 So.2d 42, 43 (Fla. 4th DCA 1995) (reversing because “although R.M. orally agreed to be represented by a certified legal intern, he did not do so in writing, and was not advised that he could refuse and be represented by a member of the bar”);
 
 In the Interest of J.H.,
 
 580 So.2d 162 (Fla. 4th DCA 1991) (reversing in the absence of an intelligent waiver; consent form did not notify J.H. of right to have supervising attorney present when required by judge),
 
 approved,
 
 596 So.2d 453 (Fla.1992) (amending R. Regulating Fla. Bar 11-1.2(a) to require supervising
 
 *946
 
 attorney’s presence at all critical stages);
 
 In the Interest of L.S.,
 
 560 So.2d 425 (Fla. 4th DCA 1990) (reversing based on lack of written consent without addressing whether the intern was supervised for the various proceedings);
 
 In the Interest of A.R.,
 
 554 So.2d 640 (Fla. 4th DCA 1989) (reversing in short opinion for lack of consent waiver without addressing the extent to which the intern had been supervised);
 
 In the Interest of C.B.,
 
 546 So.2d 447, 448 (Fla. 4th DCA 1989) (reversing based on lack of direct evidence that C.B. consented to intern’s representation; although intern testified that juvenile was informed of her status, court found this to be “no substitute” for proof that appellant had been advised he could refuse the representation).
 

 In the instant case, however, a full evi-dentiary hearing was held. After the hearing, the trial court concluded that (1) he did not understand why the clerk’s office had lost the consent form; (2) appellant was well aware of the intern’s status at trial; (3) he had asked appellant at trial if he was satisfied with counsel, to which appellant replied that he was; and (4) appellant had been supervised through each of the proceedings he handled. The trial court’s findings established that appellant signed the waiver, that it was in fact filed (as evidenced by the trial court’s statement that it did not know why the clerk had lost the form), and there is a standard form waiver in the record which complied with the Florida Bar rules and evidences that appellant requested the help and representation of an intern. As such, because all necessary inquiries were met through evidence presented at the hearing dedicated to this issue, we affirm.
 

 WEBSTER and CLARK, JJ., concur.