575 A.2d 574

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Jeffrey CHASE.**

Superior Court of Pennsylvania.

Argued Nov. 28, 1989.

Filed April 23, 1990.

Reargument Denied June 25, 1990.

Linda Perkins, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Jeffrey Shender, Philadelphia, for appellee. ‹

Before BROSKY, BECK and CAVANAUGH, JJ.

BECK, Judge:

This is an appeal by the Commonwealth from a trial court order suppressing evidence seized from the defendant. We find that the police had probable cause to arrest the defendant, and that the search and seizure of evidence in the possession of the defendant was proper. Accordingly, we reverse the suppression order.

The following facts were established by the uncontradicted suppression hearing testimony of Lieutenant Michael Morrin of the Philadelphia Police Narcotics Unit. At approximately 5:30 P.M. on July 9, 1987, Lieutenant Morrin was stationed as a back-up for Brown, a fellow officer who was acting in an undercover capacity in the vicinity of Orthodox Street in Philadelphia. Morrin received a radio transmission from Brown in which Brown stated that he "had just purchased narcotics from a black man wearing a blue shirt in the 1900 block of Orthodox, at the corner of Tackawanna and Orthodox." At the time of this broadcast, Morrin was at a location a few blocks away from Brown. In response to the broadcast, Morrin, accompanied by other members of the Narcotics Unit, drove his vehicle to the 1900 block of Orthodox Street. Upon arrival, Morrin observed the appellee Jeffrey Chase, a black man who was dressed in a blue shirt, standing at the corner of Tackawanna and Orthodox. Morrin also observed another black man with a blue shirt on the corner. Morrin exited his vehicle

and announced "Police," whereupon Chase ran west on Orthodox Street. Morrin pursued Chase. He stated at the suppression hearing that he did not know whether the other man had also fled.

Upon overtaking Chase, Morrin noticed that Chase was holding a tennis ball in his hand. The tennis ball had a two to three inch slit. Morrin removed the tennis ball from Chase's hand in order to conduct a frisk; he squeezed the ball, peered inside, and observed packets of white powder sealed with blue tape. A subsequent search of appellee revealed that he was carrying $178 in cash. The cash and the tennis ball were confiscated, and the defendant was charged with felony drug offenses.

█ Counsel for appellee filed a motion to suppress the evidence seized. On March 6, 1989, the trial court held a suppression hearing at which Morrin testified for the Commonwealth. The defense called no witnesses. At the conclusion of the hearing, the court granted the suppression motion. The Commonwealth filed a motion for reconsideration, and on March 31, 1989, the court vacated its prior order. On April 13, 1989, after entertaining additional argument by counsel, the court again ordered the evidence suppressed. The Commonwealth filed a timely notice of appeal from the April 13th order with this court. Since the Commonwealth has certified in good faith that the suppression order if given effect would substantially handicap or terminate its prosecution, we have jurisdiction to entertain this appeal. *Commonwealth v. Toanone*, 381 Pa.Super. 336, 339, 553 A.2d 998, 999 (1989).

Our standard of review of the grant of a suppression motion is well established.

In reviewing the findings of a suppression court where the Commonwealth is appealing, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983) (plurality opinion). While we are bound by the lower

court's findings of fact if supported by the record, we are not bound by the court's legal conclusions which are drawn from the facts of the case. *Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111 (1985).

*Commonwealth v. Lagana,* 517 Pa. 371, 375–76, 537 A.2d 1351, 1353–54 (1988).

The trial court concluded that Chase was under arrest at the time he was initially stopped by the police, and that this arrest was without probable cause. The Commonwealth contends that Officer Morrin *did* have probable cause to arrest Chase, even prior to the search of the tennis ball. Although this case is a close one, we agree with the Commonwealth's legal analysis as to probable cause. Accordingly, the inspection of the tennis ball may be justified as a search incident to a lawful arrest. *See Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

The Commonwealth also argues that the inspection of the tennis ball was permissible under the stop and frisk doctrine of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See generally Commonwealth v. Davidson,* 389 Pa.Super. 166, 566 A.2d 897 (1989). We need not reach the merits of the Commonwealth's alternative theory.

We begin our review by setting forth the standard for probable cause to arrest.

The established test for determining whether an officer had sufficient probable cause to legally justify a warrantless arrest involves looking at the facts and circumstances confronting the officer at the time of the arrest. As our Supreme Court noted in *Commonwealth v. Travaglia,* 502 Pa. 474, 484, 467 A.2d 288, 292 (1983), *cert. denied, Lesko v. Pennsylvania* and *Travaglia v. Pennsylvania,* 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984),

A police officer may arrest without a warrant where there is probable cause to believe that a felony has been committed and that the arrestee is the felon. Probable cause exists where the facts and circum-

stances within the knowledge of the officer are reasonably trustworthy and sufficient to warrant a person of reasonable caution in believing that the arrestee has committed the offense.

Furthermore, we note that the standard of probable cause must be applied to the totality of the circumstances facing the police. *Commonwealth v. Kazior*, 269 Pa.Super. 518, 410 A.2d 822 (1979). Thus,

> [w]hen we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element.... We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might.... Finally, we must remember that in dealing with questions of probable cause, we are *not* dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond a reasonable doubt' standard which we apply in determining guilt or innocence at trial.

*Commonwealth v. Simmons*, 295 Pa.Super. 72, 83, 440 A.2d 1228, 1234, *quoting Commonwealth v. Devlin*, 221 Pa.Super. 175, 178, 289 A.2d 237, 239 (1972) (emphasis in original).

*Commonwealth v. Ellis*, 354 Pa.Super. 11, 17–18, 510 A.2d 1253, 1256 (1986) (en banc).

■ Applying this standard, we find that the police had probable cause to arrest the appellee. The arresting officer received a radio broadcast from his partner stating that the partner had just purchased narcotics from a black man in a blue shirt at a particular street corner. Upon responding to the report, the officer observed appellee, a man who matched the description of the drug dealer, standing at the precise location where the drug deal had taken place. When the arresting officer announced "Police", appellee's immediate reaction was to turn and flee. Although flight, in and of itself, does not supply probable cause to arrest,

flight in combination with other factors may reasonably indicate that an arrestee has committed a criminal offense. *See, e.g., Commonwealth v. Woodson,* 342 Pa.Super. 392, 493 A.2d 78 (1985) (finding probable cause for arrest of suspect matching description of "young black man wearing a beige sweater or shirt" who evaded police and offered unsubstantiated explanation for his presence near scene of crime); *Commonwealth v. Williams,* 317 Pa.Super. 456, 464 A.2d 411 (1983) (finding probable cause for arrest of suspect matching description of "black man with mustache" seen near time and place of crime who repeatedly fled from police). Under all the circumstances of this case, including the close proximity of the time and place of the drug transaction to the time and place of arrest, we conclude that appellee's arrest was not illegal.[1]

Appellee argues that the description of the drug dealer as a black man in a blue shirt was far too general to provide a basis for probable cause. The leading case on impermissibly broad descriptions is *Commonwealth v. Jackson,* 459 Pa. 669, 331 A.2d 189 (1975). In *Jackson,* witnesses to a shooting in West Philadelphia described the assailants as two Negro males in dark clothing, between 5'6" and 5'8" in height, with medium builds, medium to dark complexions and semi-bush haircuts. Police went throughout the neighborhood in the hours after the slaying arresting all people in the vicinity who roughly matched this description. In all some 15 to 20 people were taken into custody. The defendant was arrested approximately *one hour* after the shoot-

1. At the preliminary hearing, Officer Morrin estimated that the total time from the drug buy to his arrival at the corner of Tackawanna and Orthodox was three minutes. Officer Morrin was not asked for a time estimate at the suppression hearing. However, according to his uncontested suppression hearing testimony: 1) he was acting as backup to the undercover policeman; 2) the undercover policeman radioed that the drug buy had just been completed; 3) as a result of this information, he drove to the scene of the crime; and 4) he was only a few blocks away from his destination. Viewing all of the evidence adduced at the suppression hearing in the light most favorable to the appellee as the prevailing party at the suppression hearing, and allowing the appellee the benefit of all reasonable inferences from the evidence, we must nonetheless conclude that Officer Morrin arrived at the intersection shortly after the drug buy.

ing and *one block away* from the scene of the crime, even though he wore light colored trousers and no shirt rather than the described dark clothing. In reversing the defendant's conviction, the Court condemned the "dragnet arrests" conducted by the police, and stated that "descriptions applicable to large numbers of people will not support a finding of probable cause." *Id.,* 459 Pa. at 674, 331 A.2d at 191.

This case is clearly distinguishable from *Jackson.* The most significant aspect of the case sub judice is that the suspect who matched the general physical description was sighted by the police *at the same intersection where the crime occurred and in the immediate aftermath of the crime.* We do not deal here with a police manhunt for all black men in blue shirts throughout the neighborhood. Rather, the general description of a black man in a blue shirt was qualified by the precise locality of and the timing of the appellee's initial contact with the arresting officer. The profile that appellee matched was of a black man in a blue shirt standing at the corner of Tackawanna and Orthodox at about 5:30 P.M. on July 9, 1987. These characteristics, when combined with appellee's sudden flight from the police, are sufficient for probable cause.

Appellee's brief cites additional cases condemning as illegal detentions based upon vague descriptions. In none of these cases did an arrest occur at the same location as the crime. *See Commonwealth v. Fassett,* 496 Pa. 529, 437 A.2d 1166 (1981) (defendant stopped nine hours after robbery and eight miles from crime scene); *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970) (defendants stopped twenty minutes after shooting and three blocks from crime scene); *Commonwealth v. Sams,* 465 Pa. 323, 350 A.2d 788 (1976) (suspects described only as Negro males fleeing south on Eleventh Street; defendant arrested one and a half blocks from scene of killing running south on Juniper Street); *Commonwealth v. Anderson,* 360 Pa.Super. 466, 520 A.2d 1184 (1987) (defendant arrested two hours after killing and two blocks from crime scene); *Commonwealth v. Ryan,* 253 Pa.Super. 92, 384 A.2d 1243 (1978)

(defendants arrested at unspecified time after robbery near area where suspects had fled). Appellee's reliance on these authorities is misplaced.

Appellee also asserts that probable cause to arrest was lacking because he was not the only person who matched the police description. Officer Morrin testified that he observed another black man with a blue shirt standing at the same intersection as the appellee. When appellee fled, Morrin focused his attention on apprehending the appellee. Morrin was unable to say whether the other man remained at the intersection. In granting the suppression motion, the trial court emphasized that the Commonwealth had not affirmatively proven that appellee was the only person who ran. The court then reasoned as follows:

Well, if I understand the Commonwealth's argument, the Commonwealth or the police officers would have been justified when they reached the corner and found two men with blue shirts, two black men with blue shirts, and they both had fled, that the Commonwealth would have been justified in arresting both of them.

But it seems to me that that is precisely the situation that the law seeks to avoid where you can arrest more than one person on the theory that you have probable cause to think they are both guilty. And it seems to me that you cannot have probable cause to think that both are guilty when it is clearly a crime committed only by one person.

We note initially that this is not a case in which the record establishes that a policeman observed two identical individuals simultaneously fleeing the crime scene. It is uncontested that Officer Morrin saw the appellee run from the intersection. The record is silent as to the physical movements of the other man. A policeman who is reacting to the imminent escape of a suspected felon may not have ample opportunity to study the movements of other persons in the area. In assessing probable cause, the question is not whether the Commonwealth can demonstrate with certainty that the defendant took an action that was not also taken by some other individual. The question is whether

the arresting officer, based upon the limited information available to him at the time of the arrest, had sufficient reason to believe that the arrestee had committed the offense.

■ Moreover, we must take issue with the trial judge's commentary on probable cause. We do not agree that the police could never have probable cause to arrest two persons if only one person has committed the crime. "While the law requires that probable cause have a fairly narrow focus, thereby precluding, for example, dragnet operations, we do not believe that the focus must in all situations narrow down to a single suspect...." *Commonwealth v. Bunch*, 329 Pa.Super. 101, 114, 477 A.2d 1372, 1379 (1984). Under some circumstances, there may be probable cause to believe that either of two suspects was the perpetrator of the criminal act.

The Pennsylvania Supreme Court's decision in *Commonwealth v. Sangricco*, 475 Pa. 179, 379 A.2d 1342 (1977) is instructive. In that case, the victim died of a gun shot wound while at the apartment of Sherilyn Grits, his estranged wife. Grits and her boyfriend, the defendant George Sangricco, were both present when the victim was shot. Grits and Sangricco both insisted that the victim had shot himself, even though the victim was left handed and the wound had been inflicted on the right side of the head. The police obtained a search warrant authorizing them to subject both Grits and Sangricco to neutron activation analysis, a technique designed to reveal if a suspect has recently fired a gun by examining chemical residues on the hands. Sangricco was eventually convicted of voluntary manslaughter. On appeal, Sangricco argued that the warrant had been issued without probable cause. The Court rejected this argument on the ground that the police acted reasonably in suspecting that either Sangricco or Grits was involved in the homicide. Thus, the police had probable cause to obtain a warrant for the search of two suspects even though there had been only one gunman.

This court's decision in *Commonwealth v. Bunch, supra,* provides further guidance regarding probable cause deter-

minations. In *Bunch,* a witness observed three black men escaping in a getaway car following a robbery. A few hours later, a state trooper stopped a car that matched the witness' description. The car had a black male driver and three black male passengers. The trooper arrested all four black men, even though there was good reason to believe that one of the four was innocent. We held that the presence of an innocent man did not deprive the trooper of probable cause to arrest. In addressing this issue, we quoted the following commentary with approval:

> Probable cause may justify the arrest of more than one person. If, for example, a policeman sees A and B bending over a dead man and each accuses the other of killing the victim, there is probable cause for the arrest of either or both and the arrest of A does not preclude the arrest of B. Similarly, if A is found one block north of a recently robbed bank and matches the description of the robber, the arrest of A does not preclude the subsequent arrest of B who also matches the description and is found one block south of the bank.

In either case, it would be reasonable for the police to arrest both A and B on probable cause even though they believe that only one of them committed the crime. The purpose of the arrest, however, is not the traditional and statutory purpose of an arrest: to charge the arrestee with crime. Rather, it is to initiate a short-term process of sorting out, usually on the scene, to determine which person should be charged with crime, *i.e.,* arrested in the full sense of the word. Thus the initial 'arrest' is really in the nature of a stop or detention rather than a true arrest.

Although multiple arrests may be reasonable in certain circumstances, the law does not allow dragnet arrests of many suspects for investigation of each. Factors to separate the reasonable from the unreasonable have been well stated elsewhere:

> "Other factors may be important in determining the validity of multiple arrests in a given situation. The degree of certainty that the actual offender is within

the group would seem relevant, along with the size of the group. The seriousness of the offense may affect the result. *Also of importance is the need for immediate action, as where two persons of unknown identity are running from the scene of a crime.* The available means of postarrest selection may be a deciding factor. For example, the arrest of three suspects to enable a witness to view them in a lineup may be less objectionable than the arrest of the same number for interrogation...." (Footnotes omitted) W. LaFave, Arrest, 262 (1975).

*Bunch,* 329 Pa.Super. at 116–117, 477 A.2d at 1380 (emphasis added) (quoting *State v. Jordan,* 36 Or.App. 45, 49–52, 583 P.2d 1161, 1163–64 (1978), *aff'd,* 288 Or. 391, 605 P.2d 646, *cert. denied,* 449 U.S. 846, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980) (footnotes omitted)).

We find that in the case sub judice, the arresting officer had probable cause to arrest the appellee notwithstanding the fact that another black man in a blue shirt may also have run from the intersection where the drug buy occurred.

The suppression order is hereby reversed and the case remanded for trial. Jurisdiction is relinquished.