**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Lawrence R. PALMER, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 5, 2002.

Filed Dec. 23, 2002.

Lawrence R. Palmer, appellant, pro se.

Michael W. Streily, Deputy Dist. Atty., and Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before: DEL SOLE, P.J., GRACI and MONTEMURO *, JJ.

GRACI, J.:

¶ 1 Lawrence R. Palmer ("Palmer") appeals, *pro se*, the order entered December 14, 2001, disposing of his second petition brought pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. Palmer's petition was denied without a hearing, following proper notice, on the basis that he failed to make a strong *prima facie* showing that a miscarriage of justice occurred and because the petition was untimely filed. For the reasons that follow, we affirm.

---

* Retired Justice assigned to the Superior Court.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2 On March 29, 1995, Palmer was convicted by a jury at case 199415697 of three counts each of aggravated assault and recklessly endangering another person, and one count each of violation of the uniform firearms act, firearms not to be carried without a license, and criminal conspiracy. Palmer was acquitted at case 199415699 of first and third-degree murder. Palmer was sentenced on May 22, 1995, to an aggregate term of 21 to 42 years' imprisonment. This Court affirmed the judgment of sentence on September 4, 1996. *Commonwealth v. Palmer*, 455 Pa.Super. 658, 686 A.2d 1366 (1996) (unpublished memorandum). The Pennsylvania Supreme Court denied allowance of appeal on March 7, 1997. *Commonwealth v. Palmer*, 547 Pa. 753, 692 A.2d 564 (1997).

¶ 3 Palmer filed a PCRA petition on October 20, 1997. Counsel was appointed to represent Palmer, and an amended petition was filed on his behalf. The PCRA court issued notice of its intent to dismiss the petition without a hearing, and subsequently dismissed the petition on May 6, 1998. On June 7, 1999, this Court affirmed the order of the PCRA court as to the substantive issues raised in the petition; however, the case was remanded to permit Palmer to amend the petition. *Commonwealth v. Palmer*, 742 A.2d 208 (Pa.Super.1999) (unpublished memoran-

dum). On remand, appointed counsel filed a "no-merit" letter [1] and request to withdraw. The PCRA court granted counsel's request on December 7, 1999, and issued notice of its intent to dismiss the petition without a hearing. The PCRA court dismissed the petition on December 30, 1999. This Court affirmed on December 20, 2000, and the Pennsylvania Supreme Court denied allowance of appeal on June 5, 2001. *Commonwealth v. Palmer*, 769 A.2d 1207 (Pa.Super.2000) (unpublished memorandum), *appeal denied*, 566 Pa. 640, 781 A.2d 142 (2001).

¶ 4 Palmer filed the present PCRA petition, his second, on October 21, 2001. He claimed eligibility for relief based on a violation of the state or federal Constitutions which undermined the truth-determining process, 42 Pa.C.S.A. § 9543(a)(2)(i), a violation of the Constitution, law or treaties of the United States requiring the granting of federal habeas corpus relief to a state prisoner, 42 Pa. C.S.A. § 9543(a)(2)(v),[2] after-discovered evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced, 42 Pa.C.S.A. § 9543(a)(2) [3], and, lastly, the imposition of a sentence greater than the lawful maximum, 42 Pa.C.S.A. § 9543(a)(2)(vii). Motion for Post Conviction Collateral Relief ("PCRA Petition"), at 2, ¶ 4. Recognizing the requirement of a strong *prima facie* showing demonstrating

---

**1.** *See Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988); *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213, 215 (1988) (*en banc*).

**2.** Though this provision had been deleted from the PCRA when it was amended in 1995, *see* Act of Nov. 17, 1995, P.L. 1118, No. 32 (Special Session No. 1), § 1, effective January 16, 1996, it still appears on the standard forms used by prisoners in filing PCRA petitions.

**3.** The 1995 amendments to the PCRA govern these proceedings since Palmer's petition was filed after the effective date of those amendments. This section now requires a showing that the newly-discovered evidence "would have *changed* the outcome of the trial," not merely "affected" it. 42 Pa.C.S.A. § 9543(a)(2)(vi)(emphasis added). Nonetheless, the prison-issued form still reflects the obsolete language.

a miscarriage of justice before a second PCRA petition may be entertained, *see Commonwealth v. Szuchon,* 534 Pa. 483, 633 A.2d 1098, 1099 (1993), Palmer asserted that he believed that, after he was convicted, one Delmar Allen Taylor "had been arrested for the crime for which Palmer had already been convicted." PCRA Petition, at 5. This, he claimed "relates to [his] innocence." *Id.* He alleged that this constituted *Brady*[4] material and sought an order directing the prosecutor's office to turn over such information to him. *Id.*

¶ 5 The PCRA court issued notice of its intent to dismiss the petition without a hearing on November 1, 2001. The PCRA court, which had presided over Palmer's jury trial and had adjudicated his first PCRA petition, including the remand from this Court after the appeal from the denial of that petition, explained that Palmer "failed to make a strong *prima facie* case that a miscarriage of justice has occurred and the petition is barred by the PCRA's statute of limitations." Notice of Intention to Dismiss PCRA Petition under Pa. R.Crim.P. 907.

¶ 6 Palmer, in response to this notice, sought leave to amend his petition on November 1, 2001. In his motion, he attempted to demonstrate, *prima facie,* the miscarriage of justice required before his second PCRA petition could be entertained. [First] Motion to Grant Leave to Amend Post–Conviction Relief Act Petition Pursuant to Title 42, C.S.A. Pa.R.Crim.P. 905 ("First Motion"), at 2–3. He alleged that one of his co-defendants, Paul Peterson, gave a statement upon his arrest implicating both Palmer and "Delmar Taylor" in these crimes. As he had in his original petition, Palmer alleged that, after he was convicted in 1995, Taylor was arrested for these offenses and, after a coro-

ner's inquest, released. Palmer asserted that this was inconsistent with the Commonwealth's theory at trial in which, it asserted three, not four, people were involved in the incident. *Id.* at 3–4. He argued that this new information would have impacted on his "misidentification defense" and "would have cast doubt on the prosecutor's case." *Id.* at 4. He contended that, in charging a fourth person, the Commonwealth was misleading Palmer's jury if it knew of Taylor before Palmer's trial or that, in charging four persons with a crime committed by only three, one of the four charged persons was innocent. *Id.* He claimed to be the innocent one. *Id.* Palmer described his alleged after-discovered evidence and argued, *inter alia,* that "it would 'effect the outcome of the trial.'" First Motion, at 6–8. Palmer asserted that he satisfied the pleading requirements of the PCRA. 42 Pa.C.S.A. § 9543. *Id.* at 5. The amended petition alleged facts in an attempt to meet the requirements for relief based on newly-discovered evidence, 42 Pa.C.S.A. § 9543(a)(2)(vi), and to satisfy the so-called "after-discovered evidence" exception to the timeliness/jurisdictional requirements of the PCRA. 42 Pa.C.S.A. § 9545(b)(1)(ii) and (2). *Id.* at 3–8.

¶ 7 By order dated December 14, 2001, the PCRA court granted Palmer's motion to amend his second PCRA petition. Order Dismissing Second PCRA Petition and Trial Court's Statement Under Pa.R.A.P. 1925. In the same order, the PCRA court dismissed Palmer's second petition, as amended "without the appointment of counsel because a prior dismissal of a PCRA petition was affirmed on appeal, [Palmer] has failed to make a strong *prima facie* case that a miscarriage of justice has occurred and the petition is barred by the PCRA's statute of limitations." *Id.*

¶ 8 On December 17, 2001, Palmer filed a second motion seeking leave to amend

4. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

his PCRA petition.[5] [Second] Motion to Grant Leave to Amend Post–Conviction Relief Act Petition Pursuant to Title 42 C.S.A. Pa.R.Crim.P. 905. Attached to that motion was a copy of a letter on the stationery of the Allegheny County Coroner's Office dated December 12, 2001. The letter was addressed to "Mr. Lawrence" and stated, in its entirety: "Charges were withdrawn on Taylor by the D.A.'s office. Enclosed is a copy of the withdraw [sic]." The letter bears the name and what purports to be the signature of "Rose Shenkel" who is not otherwise identified. Also attached to the motion is a District Justice Transcript indicating that "Delmar Allen Taylor" was charged with "Criminal Homicide" by warrant issued on November 18, 1994, and that a complaint was filed against him on November 19, 1994. The date of the offense is listed on the transcript as July 6, 1994. This document lists Taylor's co-defendants as "Paul Peterson," "Lawrence Rafeal Palmer, a/k/a Turk," and "Tyrone Solemon Bey." The transcript reflects Taylor was arrested on this charge on June 12, 1995. The case against Taylor was listed for preliminary hearing at the coroner's office on July 26, 1995. The transcript shows "W/D" as the disposition of the criminal homicide charge against Taylor.[6]

¶ 9 No action was taken on this second motion to amend before Palmer filed his notice of appeal to this Court on December 31, 2001,[7] from the order of December 14, 2001, dismissing his second PCRA petition.[8] Palmer's timely appeal is now before us for disposition.

## II. SCOPE AND STANDARD OF REVIEW

¶ 10 In reviewing the propriety of the PCRA court's dismissal of the petition, we are limited to determining whether the court's findings are supported by the record, and whether the order is free of legal error. *Commonwealth v. Kutnyak*, 781 A.2d 1259 (Pa.Super.2001). Here, we conclude, upon review of the record, that the PCRA court properly determined that Palmer "has failed to make a strong *prima facie* case that a miscarriage of justice has occurred and the petition is barred by the PCRA's statute of limitations" precluding the PCRA court from entertaining Palmer's second petition. Finding no error in that determination, we affirm the order of the PCRA court.

## III. DISCUSSION

### A. *Timeliness*

■■■ ·¶ 11 We begin our analysis by noting that the timeliness requirements of

---

5. The clerk of courts received it on December 21, 2001.

6. Consistent with these dates, our prior opinion in this case shows that Palmer was charged as a result of an incident which occurred on July 6, 1994, resulting in his conviction and sentencing on May 22, 1995. *Commonwealth v. Palmer*, No. 154 WDA 2, 769 A.2d 1207 (Pa.Super. Dec. 20, 2000) (unpublished memorandum), pp. 1–2.

7. The notice of appeal was received by the clerk of courts on January 4, 2002. Whatever date is used, this appeal from the order of dismissal entered on December 14, 2001, is timely.

8. The certified record contains an "Order of Court" dated January 8, 2002, purporting to dispose of the second motion. The order denies the motion "because (1) [Palmer's] second PCRA petition was dismissed on December 14, 2001, and (2) defendant alleges no facts which would save the petition from being time-barred." Since the PCRA court had been divested of jurisdiction to proceed further by Palmer having filed a notice of appeal on December 31, 2001, this order is a nullity and has no bearing on our disposition. Pa. R.A.P. 1701(a).

42 Pa.C.S.A. § 9545(b) are jurisdictional in nature, and the courts lack jurisdiction to grant PCRA relief unless the petitioner can plead and prove that one of the exceptions to the time bar applies. *Commonwealth v. Pursell*, 561 Pa. 214, 749 A.2d 911, 913–14 (2000). "[W]e must, as a threshold matter, determine whether the petition should be dismissed as untimely." *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 217 (1999).

¶ 12 Palmer's petition was filed on October 21, 2001; therefore, it is governed by the 1995 amendments to the PCRA, which were enacted on November 17, 1995, and became effective 60 days thereafter.[9] *Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581, 586 (1999); *Commonwealth v. Carr*, 768 A.2d 1164, 1167 (Pa.Super.2001). The timeliness requirement contained in the Act is as follows:

(b) Time for filing petition.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Penn-

sylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

(4) For purposes of this subchapter, 'government officials' shall not include defense counsel, whether appointed or retained.

42 Pa.C.S.A. § 9545(b).

¶ 13 Here, Palmer's judgment of sentence became final 90 days after our Supreme Court denied allowance of appeal on March 7, 1997, and the time period within which to file a petition for writ of *certiorari* with the United States Supreme Court expired. *See* U.S. Supreme Court Rule 13 (effective October 2, 1995) (petition for writ of *certiorari* to review the judgment of sentence is deemed timely when it is filed within 90 days after discretionary review has been denied by the Pennsylvania Supreme Court). Thus, for the purposes of section 9545, the judgment of sentence became final on June 5, 1997. Therefore, a timely PCRA petition, including this second petition, had to be filed by June 5, 1998. On its face, then, Palmer's second petition would appear to be untimely, as it was not filed until October 21, 2001. *See Commonwealth v. Alcorn*, 703 A.2d 1054 (Pa.Super.1997), *appeal denied*, 555 Pa. 711, 724 A.2d 348 (1998).

¶ 14 Still, as set forth above, section 9545 also provides for three excepted cir-

9. Act of November 17, 1995, P.L. 1118 No. 32 (Spec. Sess. No. 1) § 1.

cumstances wherein a petition will be considered timely, even though it is filed more than a year after the judgment of sentence became final. These exceptions, set forth above, include interference by government officials in the presentation of the claim, after-discovered facts or evidence, and an after-recognized constitutional right. 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii). Our Supreme Court has ruled that these exceptions must be specifically pleaded or they may not be invoked. *Commonwealth v. Beasley,* 559 Pa. 604, 741 A.2d 1258 (1999). In addition, § 9545(b)(2) requires the PCRA petition be filed within 60 days of the date the claim could have first been presented.

¶ 15 Palmer argues, at least, that the after-discovered evidence exception to the timeliness requirement, 42 Pa.C.S. § 9545(b)(1)(ii), applies to this matter.[10] In order to succeed under this exception and avoid the PCRA time bar, Palmer must plead and prove that the facts upon which the claim is predicated were unknown to him and could not have been ascertained earlier by the exercise of due diligence. 42 Pa.C.S. § 9545(b)(1)(ii). *See Commonwealth v. Bronshtein,* 561 Pa. 611, 752 A.2d 868, 870–71 (2000), *citing Commonwealth v. Beasley,* 559 Pa. 604, 741 A.2d 1258, 1261 (1999). In addition, he has to show that these new facts constitute "exculpatory evidence" that "would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi); *Commonwealth v. Yarris,* 557 Pa. 12, 731 A.2d 581, 588, 590, 591 (1999) (setting forth statutory require-

ments for overcoming time bar based on after-discovered evidence exception and determining that PCRA petitioner failed to carry burden of showing that information could not have been ascertained earlier).

¶ 16 Palmer contends that Delmar Taylor, rather than Palmer, was the third perpetrator of the crime, and that the Commonwealth suppressed evidence that Taylor had been arrested for the crime. Palmer claims that the Commonwealth's witnesses testified that three individuals committed the crime, and the Commonwealth represented to the jury that all three individuals, Palmer, Bey and Peterson, had been identified and charged with the crime. Palmer contends, however, that Delmar Taylor had also been charged with the crime, resulting in four suspects, when witnesses saw only three individuals commit the shooting. Palmer argues that the jury was unaware of this information, and was misled by the Commonwealth. He contends that this information is exculpatory, suggesting that, given information that an individual other than himself, Bey and Peterson was involved, the jury may have had a reasonable doubt as to Palmer's guilt. He argues that, since Taylor had been charged and the Commonwealth failed to disclose this information, a *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) violation occurred. Brief for Appellant, at 22–36.

¶ 17 Palmer raised the issue of after-discovered evidence and a *Brady* violation,[11] albeit somewhat obliquely, in his original *pro se* petition. He elaborated on

---

**10.** It could be asserted that Palmer is also arguing the "interference by government officials" exception under section 9545(b)(1)(i), however inartfully. The Commonwealth has recognized this potential argument and has addressed it in its brief. *See* Brief for Appellee, pp. 31–34. As will be demonstrated, *infra,* such a claim is also unavailing.

**11.** Though an after-discovered evidence claim and a *Brady* claim provide different grounds for relief under the PCRA, 42 Pa.C.S.A. § 9543(a)(2)(i) and (vi), and while they provide different exceptions to the one-year time limit, 42 Pa.C.S.A. § 9545(b)(1)(i) and (ii), as the facts related to these arguments are intertwined, they will be addressed together.

the after-discovered evidence aspect of his petition in his motion to amend the PCRA petition. In his brief to this Court, he concentrates almost exclusively on the *Brady* aspect of his claim.[12] On this record, however, what Palmer offers fails to demonstrate any entitlement to relief from the timeliness requirements of the PCRA.

¶ 18 The information that Taylor was arrested for this incident on June 12, 1995, and that the charges against him were withdrawn at a coroner's hearing held on July 25, 1995, obviously could not have been known at the time of trial in March of that year. Palmer claims that this is after-discovered evidence and that it was withheld by the prosecution in violation of *Brady.* While this information could not have been made available at or before trial, information about Taylor's alleged participation in the incident and his being considered a suspect was placed on the record during a pre-trial motions hearing and at the trial itself.

¶ 19 Taylor's name was first mentioned on the trial court record in the context of motions to sever filed by Palmer and his co-defendant, Tyrone Bey.[13] David S. Shrager, Esquire, appeared for co-defendant Tyrone Bey, and Kim W. Riester, Esquire, for appellant. Mr. Shrager noted that Peterson, Palmer and Bey were considered suspects shortly after the shootings. Pretrial Hearing N.T., 1/9–10/95 ("Pretrial Hearing"), at 4. He noted that Peterson and Palmer had fled the jurisdiction, while Bey had not. Mr. Shrager stated that he believed testimony about this fact would place Bey in a position antagonistic to Palmer. *Id.* at 4–6.

¶ 20 Among other things, Mr. Shrager described his understanding of a conversation where Palmer indicated to Bey that Bey was not one of the people involved but that the third person was a Delmar Taylor. *Id.* at 9. Mr. Shrager suggested that if Palmer took the stand, it would be appropriate for the fact-finder to hear this information, again placing Palmer and Bey in antagonistic positions. *Id.* On this point, the trial court asked Mr. Shrager if Bey would testify that Palmer told him that someone other than Bey was the third man. Pretrial Hearing N.T., 1/9–10/95, at 11. Mr. Shrager stated that Bey might so testify, but also suggested that if Palmer testified, he certainly could be cross-examined on this point. *Id.* at 12.

¶ 21 Palmer's attorney, Mr. Reister, noted that there was a police report provided in discovery that alluded to the fact that Bey told the police that Palmer had made the statement to Bey that was referred to by Bey's attorney: that "I, Mr. Palmer, did the shooting. You did not do the shooting. The third person was Delmar Taylor." Pretrial Hearing, at 13.

¶ 22 Palmer's attorney also noted that co-defendant Peterson had given a statement after being arrested in which he implicated himself, Palmer and Delmar Taylor and exculpated Palmer's co-defendant, Bey. *Id.* at 15. In response, the prosecutor agreed that police reports indicated that Peterson made a statement implicating himself and Palmer and absolving Bey. *Id.* at 18.[14] After the severance motion was denied, there was additional discussion concerning the alleged conversa-

---

**12.** Though we might find this argument waived for not having raised it below, *see* Pa.R.A.P. 302(a), we will not do so in light of our disposition.

**13.** Co-defendant Peterson's case had been severed from the trial of Palmer and Bey.

**14.** This statement by Peterson was subsequently ruled inadmissible during the trial. Trial N.T., 3/22–23/95, at 1295.

tion between Palmer and Bey in which it was claimed that Palmer exculpated Bey and named Delmar Taylor as the third person involved in the shooting along with Palmer and Peterson. *Id.* at 73–79.

¶ 23 Later during the pretrial hearing, there was a discussion of a report concerning the processing of fingerprints of a car involved in the crime. Bey's counsel noted that none of the prints processed from the car matched his client's. He asked if rolled palm prints of Delmar Taylor had been obtained since the preparation of the report. The report indicated that those prints were not available at the time the report was prepared. Pretrial Hearing, at 127–128. The prosecutor responded that fingertip impressions taken from the car had been compared with Taylor's, and there was no match. He expressed his belief that no palm print had ever been obtained from Taylor, so there was nothing to compare. *Id.* at 128–129.[15]

¶ 24 Immediately before the start of trial, there was additional discussion of Peterson's statement in which he inculpated himself, Palmer and Taylor. Trial N.T., 3/14–15/95, at 15–27.

¶ 25 In his opening argument at trial, Palmer's attorney said that Taylor's name had come up "through several witnesses." *Id.* at 88. He asked Dequay Evans, a Commonwealth witness, if Taylor was with him on the day of the incident when Evans observed Bey and Palmer driving in the area. *Id.* at 177. Taylor's name also came up in a discussion of Willie Jones' affidavit stating that he did not see Bey at the scene, *id.* at 359–369, and in a discussion concerning a phone call that Common-

wealth witness Eric Timbers allegedly made to the police saying that Taylor, not Bey, was the third actor. *Id.* at 831–837. Detective Dugan testified he compared fingerprints from the car to Taylor's, and, in response to the question, "Did you have a palm print available for the other suspects?" stated they did not have palm prints from Taylor. *Id.* at 1230.[16] Finally, Detective Marraway stated that Taylor's name came up after Bey had been arrested. *Id.* at 1242.[17]

¶ 26 The record in this case clearly precludes a finding of after-discovered evidence sufficient to excuse the timeliness requirement of the PCRA. That Taylor was a suspect was known to Palmer's counsel months before Palmer's trial. The record also refutes any claim of interference by governmental officials based on *Brady*, the second timeliness exception arguably asserted by Palmer.

¶ 27 Though the arrest of Taylor and the subsequent withdrawal of the charges against him could not have been disclosed before Palmer's trial because they did not occur until after its conclusion, the criminal complaint and the warrant for Taylor's arrest (naming Palmer, Peterson and Bey as his co-defendants in a criminal homicide committed on July 6, 1994) were public records since November 18 and 19, 1994, several months before Palmer's trial. That information was available to Palmer and his attorney before Palmer's trial. Palmer "fails to offer a reasonable explanation as to why this information, with the exercise of due diligence, could not have been obtained earli-

---

**15.** Similar testimony was introduced at trial through Detective Dugan, Trial N.T., 3/22–23/95, at 1230.

**16.** Detective Dugan also positively identified seven of nine fingerprints found in the car as Palmer's. Trial N.T., 3/22–23/95, at 1229.

**17.** Palmer's assertion that Detective Marraway committed perjury when questioned about other suspects, Brief for Appellant, at 27, is completely refuted by the record. Trial N.T., 3/22–23/95, at 1241–44.

er." *Commonwealth v. Breakiron,* 566 Pa. 323, 781 A.2d 94, 98 (2001). There is no *Brady* violation where the allegedly withheld records "were equally available to the prosecution and the defense." *Commonwealth v. Miller,* 560 Pa. 500, 746 A.2d 592, 600 (2000). "The Commonwealth does not violate the *Brady* rule when it fails to turn over evidence readily obtainable by, and known to, the defendant." *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, 305 (1999). Moreover, "the mere existence of other suspects is not 'evidence favorable to the accused' " within the Commonwealth's discovery rule. *Commonwealth v. Crews,* 536 Pa. 508, 640 A.2d 395, 406 (1994) (interpreting Pa.R.Crim.P. 305 (now 573)). Furthermore, "under some circumstances there may be probable cause to believe that either of two suspects was the perpetrator of the criminal act." *Commonwealth v. Chase,* 394 Pa.Super. 168, 575 A.2d 574, 578 (1990), *following Commonwealth v. Bunch,* 329 Pa.Super. 101, 477 A.2d 1372, 1379–80 (1984) (arrest of four people supported by probable cause "even though there was good reason to believe that one of the four was innocent"). The PCRA court properly concluded that the petition was untimely and not within any exception. 42 Pa.C.S.A. §§ 9545(b)(1)(i) and (ii). As there was no error in this conclusion, we affirm on this basis.

## B. Miscarriage Of Justice

 ¶ 28 As this was Palmer's second PCRA petition, in addition to satisfying the eligibility and timeliness requirements of the PCRA, 42 Pa.C.S.A. §§ 9543 and 9545, he was also required to comply with the dictates of *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107, 112 (1988), and its progeny. As this court has observed:

> Requests for review of a second or subsequent post-conviction petition will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred. *Lawson,* ... 549 A.2d at 112. This standard is met only if petitioner can demonstrate either: (a) the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate; or (b) he is innocent of the crimes charged. *Commonwealth v. Szuchon,* [] 633 A.2d 1098, 1099–1100 ([Pa.] 1993).

*Commonwealth v. Austin,* 721 A.2d 375, 377 (Pa.Super.1998).[18]

---

**18.** There is no question that *Lawson* survives the 1995 amendments to the PCRA. Immediately after mentioning 42 Pa.C.S.A § 9545(b) which sets forth the timing requirements for second or subsequent PCRA petitions which were added by the 1995 amendments, the Comment to Rule 907 of the Rules of Criminal Procedure explains: "Second or subsequent petitions will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred. *See Commonwealth v. Szuchon,* 534 Pa. 483, 633 A.2d 1098, 1099 (1993) (*citing Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988))." Pa.R.Crim.P. 907 Cmt. *See also Commonwealth v. Austin, supra* (discussing *Lawson* and *Szuchon* in the context of a second PCRA petition filed in 1997 and dismissed by the lower court for failing to set forth the strong *prima facie* showing of a miscarriage of justice required by *Lawson*); and Saylor, "Post Conviction Relief in Pennsylvania," 69 Pa. B.A.Q. 1,3 (January 1998) (observing that subsequent petitions must satisfy not only timeliness requirements but also *Lawson* standard). This view also finds support in the Supreme Court's statement in *Commonwealth v. Fahy,* 737 A.2d at 223, that "the court would consider a timely petition under the *Lawson* standard...." We recognize that the Court in *Fahy* said that it could not consider the petition in that case because it was untimely and that even a petition that satisfied the *Lawson* standard would not be considered if the petition was untimely. *Id.* at 223. We also recognize that the Court said that timeliness is a threshold matter, *id.* at 217, and that the Court has determined that "the courts are

¶ 29 Palmer devotes a substantial portion of his brief to trying to establish the requisite miscarriage of justice. Brief for Appellant, at 23–29. In so doing, he has abandoned any pretense of innocence and argues only that "the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate," Brief for Appellant, at 23–24 (*citing Szuchon*). Review of the record as set out above fails to bear out that claim, however. There is no after-discovered evidence. There was no evidence which the Commonwealth failed to disclose in violation of the requirements of *Brady*.

 ¶ 30 The proceedings leading to Palmer's conviction were not unfair. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 358 (1995) (claim, which was rejected by the court, that prosecutor misled defendant concerning admissibility of evidence, did not establish miscarriage of justice under *Lawson* standard). "We will not find that [a PCRA petitioner] has met the *Lawson* standard of making out a *prima facie* case that a miscarriage of justice

has occurred where his claim can be shown on the face of the record to be without any factual basis." *Commonwealth v. Loach*, 421 Pa.Super. 527, 618 A.2d 463, 468 (1992) (*en banc*). Here, the record refutes Palmer's claim.[19]

¶ 31 The PCRA court's conclusion that Palmer failed to make a strong *prima facie* case that a miscarriage of justice occurred is supported by the record and free of legal error. Accordingly, the dismissal of Palmer's petition must be affirmed.

## IV. CONCLUSION

¶ 32 The PCRA court properly concluded that Palmer's petition was untimely and that he failed to make the strong *prima facie* showing needed to demonstrate that a miscarriage of justice may have occurred resulting in the unfairness of Palmer's trial. Accordingly, under section 9545 of the PCRA and *Lawson* and its progeny, the PCRA court was barred from entertaining the claims in Palmer's second PCRA petition. The order dismissing Palmer's sec-

without jurisdiction to *consider the merits* of a PCRA petition that is filed in an untimely manner," *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201, 203 (2000) (emphasis added). A *Lawson* determination is not a merits determination. Like the threshold question of timeliness, whether a second petition satisfies the *Lawson* standard must be decided before a PCRA court may entertain the petition. Like an untimely petition, a *Lawson*-barred petition yields a dismissal. The merits are not addressed.

19. As observed above, Palmer has abandoned any claim of innocence and argues only the "unfairness" prong of *Lawson*. Though we have previously said that a claim of misidentification satisfies the "innocence" prong of *Lawson, see Commonwealth v. Dukeman*, 413 Pa.Super. 397, 605 A.2d 418, 421 (1992), under the circumstances presented here, we need not address that point. *See Commonwealth v. Travaglia*, 661 A.2d at 358 ("[s]ince

Appellant does not assert that he is innocent, relief will be granted only if he can establish that proceedings below 'were so unfair that a miscarriage of justice occurred which no civilized society can tolerate' "); *Commonwealth v. Jermyn*, 551 Pa. 96, 709 A.2d 849, 856 (1998) (where there was no claim of innocence, PCRA court confined its determination under *Lawson* standard to whether there was a miscarriage of justice which no civilized society can tolerate; Supreme Court affirmed finding of no miscarriage of justice). Moreover, though Palmer originally professed his innocence, he did not demonstrate it. "[H]e has not set forth facts in his petition which, if proven upon proper hearing, would demonstrate his innocence." *Commonwealth v. Laskaris*, 407 Pa.Super. 440, 595 A.2d 1229, 1231 (1991). He argues instead that his new evidence would only raise a reasonable doubt as to his guilt. Brief for Appellee, at 33. On the face of this record, Taylor's arrest cast no doubt on Palmer's guilt.

ond PCRA petition, being supported by the record and free of legal error, must be affirmed.

¶ 33 Order affirmed; jurisdiction relinquished.