**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KELVIN RINI | : | |
| | : | |
| Appellant | : | No. 340 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 6, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0000768-2021

BEFORE:   BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: FEBRUARY 28, 2023**

Kelvin Rini (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of one count of possession of a controlled substance and two counts of possession with intent to deliver a controlled substance (PWID).[1]  We affirm.

Relevant to this appeal, the trial court explained:

Detective Nathan Dettling is a City of Pittsburgh police officer working out of the Zone 5 police zone, [and] on October the 28th, 2020, he was at the Zone 5 station in the morning hours observing the area [] around Frankstown and North Homewood Avenues. [Police were conducting] video surveillance … to observe possible open-air [drug] sales, and they were doing focused deterrence

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 35 P.S. § 780-113(a)(16), (30).

- 1 -

and drug investigations to deal with what had been an ongoing problem. [Detective Dettling] testified that his supervisor and sergeant had received a number of community complaints regarding the open-air sales, and in addition, there had been some shootings and crimes of violence in that area. During the course of this focused deterrence, he was operating and in control of the city camera system. One of the cameras was focused at that area of Frankstown and North Homewood Avenue.

Shortly after 9:30 a.m. on October 28th, 2020, Detective Dettling from the Zone 5 station observed an individual later identified as Michael Smith approach an individual he later identified as [Appellant] …. He testified that he observed Smith hand [Appellant] cash and then retrieve what the detective observed to be a single stamp bag containing heroin and/or fentanyl, that … he saw this on the camera, and in fact, the Commonwealth introduced Commonwealth's Exhibit 1, which was the video footage of the incident that ran from approximately 9:32 a.m. to 9:33 a.m. and 50 seconds.

The [suppression court] … observed there to be an individual standing on the street wearing all dark clothing that Detective Dettling identified as being [Appellant]. The [suppression court] was able to observe, although it was difficult to see the currency transaction from the individual identified as Michael Smith to the person identified as [Appellant], you could clearly see on Commonwealth's Exhibit 1 … the person that Detective Dettling identified as [Appellant] reach into a sweatshirt area and pull out what appeared to be a single stamp bag.

The detective testified based on his experience that he knows what [a stamp bag] looks like, [it] appeared to be a white glassine packet, that he's seen over 1,000 hand-to-hand transactions. He believed it to contain fentanyl or heroin when packaged, and he knows that fentanyl and heroin when packaged has the appearance that looked like what was contained on Commonwealth's Exhibit 1. He also testified that the mannerisms of the two individuals, including the individual he identified as [Appellant], were consistent with individuals who were exchanging drugs for money ….

- 2 -

The [c]ourt also heard from Detective Francis Niemiec. He testified he's a City of Pittsburgh police officer who was also trained as was Detective Dettling in areas surrounding narcotics enforcement, including surveillance and how hand-to-hand transactions occur. [On the date of Appellant's arrest, Detective Niemiec] was also working, although he was not at the Zone 5 station[;] he was out in the area of Frankstown and North Homewood [Avenue,] working on the focused deterrence detail. Based on information that he was provided by Detective Dettling, he approached the individual who was later identified as [Appellant] … wearing what he described as a gray tossle cap, gray hoodie, gray sweatpants[; Detective Niemiec] testified that it was approximately two minutes from the time [police] received the description to the time that they were able to detain [Appellant].

**At that time, they approached [Appellant], detained him in handcuffs and then searched him**. There were heroin and fentanyl stamp bags recovered [from Appellant,] along with United States currency, and at that time they placed [Appellant] under arrest.

Trial Court Opinion, 7/6/22, 4-6 (quoting Suppression Court Findings and Conclusions, 7/23/21, at 1-2) (emphasis added).

The trial court further explained:

On October 28, 2020, Appellant was charged with the above offenses and an additional count of Possession of Marijuana, 35 [P.S.] § 780-113(a)(31). On June 28, 2021, Appellant filed a Motion to Suppress which is the subject of the appeal. On July 23, 2021, an evidentiary hearing was held whereafter the [suppression c]ourt denied the motion. After a bench trial on October 8, 2021, Appellant was found not guilty of Possession of Marijuana and guilty of the remaining three offenses. A sentencing hearing was held on January 6, 2022, at which time the court imposed a sentence of 1½ to 3 years of incarceration at Count 1 — PWID. Count 3, Possession merged with Count 1, and

no further penalty was imposed at Count 2. Appellant filed a timely Post Sentence Motion on January 7, 2022 seeking modification of his sentence, which was denied on February 7, 2022.

Trial Court Opinion, 7/6/22, at 1-2. Appellant timely appealed, and filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant presents the following issue:

Did the trial court err in denying [Appellant's] suppression motion because the police functionally arrested him without probable cause?

Appellant's Brief at 4 (capitalization modified).

Our standard of review is well-settled:

When we review the ruling of a suppression court, we must determine whether the factual findings are supported by the record. When it is a defendant who appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

***Commonwealth v. Brame***, 239 A.3d 1119, 1126 (Pa. Super. 2020) (citation omitted). "As an appellate court, we are not bound by the suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary." ***Id.*** (citation omitted).

We recognize "the Fourth Amendment to the United States Constitution [protects] people from unreasonable searches and seizures." ***In the Interest of A.A.***, 195 A.3d 896, 903 (Pa. 2018) (citation omitted).

> Our Fourth Amendment jurisprudence has developed three categories of interaction between private citizens and the police. [A] mere encounter does not require any level of suspicion or carry any official compulsion to stop or respond[, while] an investigative detention permits the temporary detention of an individual if supported by reasonable suspicion[, and] an arrest or custodial detention … must be supported by probable cause.

***Id.*** at 903-04 (quotation marks and citations omitted).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Williams***, 2 A.3d 611, 616 (Pa. Super. 2010) (*en banc*) (citations, quotation marks and emphasis omitted).

Appellant claims his custodial detention was not supported by the requisite probable cause. Appellant's Brief at 11. Appellant argues Detective Niemiec lacked probable cause to believe Appellant engaged in criminal activity. ***Id.*** According to Appellant, Detective Dettling had generally described the individual selling the heroin as an "African American male

wearing a gray tossle cap, gray sweatpants, [and] either a black or dark brown jacket over top of … a gray hoodie." ***Id.*** at 12.  Appellant asserts:

> Critically, however, Detective Dettling's broadcast did not include the individual's age, height, weight, facial hair, or any other defining characteristics.  In other words, he simply offered a vague and generic description of the individual wearing fairly common articles of clothing.

***Id.***  Appellant acknowledges that Detective Niemiec and his partner seized Appellant two minutes after the drug deal.  ***Id.*** at 13.  However, Appellant asserts the suspect no longer was visible on Detective Dettling's camera during the two-minute lapse.  ***Id.***

Appellant compares this case to the circumstances found to lack probable cause in ***Commonwealth v. Anderson***, 520 A.2d 1184 (Pa. Super. 1987), and ***In the Interest of A.P.***, 617 A.2d 764 (Pa. Super. 1992) (*en banc*).  Appellant's Brief at 15.  According to Appellant:

> Both cases had matches to descriptions of race, gender, and clothing, with [the defendant in ***Anderson***] matching the description of a black male wearing a blue sweatshirt that zipped up the front and had a red stripe down the sleeve, and [Appellant] matching the description of a black male with a grey tossle cap, grey sweatpants, black or brown jacket, and grey hoodie.  [The defendant in ***Anderson***] was not acting suspiciously nor tried to flee police when he was arrested, and neither was [Appellant].

***Id.*** at 15-16.  Appellant points out that the defendant in ***Anderson*** matched additional criteria:  dark complexion, aged 18-20, close cropped hair, and taller than 5'8" or 5'9".  ***Id.*** at 16.  Appellant claims that here, because the

- 6 -

general description did not establish probable cause for officers to believe Appellant sold the heroin, the drugs and evidence recovered during his custodial detention and search should have been suppressed as "fruit of the poisonous tree." *Id.* at 11, 16-17.

Pertinently, this Court has explained:

When an arrest is based on a description, the description must be specific. *See Commonwealth v. Jackson*, 459 Pa. 669, 331 A.2d 189, 191 (Pa. 1975). In *Jackson*, the police dispatcher notified officers that "two [African American] males in dark clothing, 5'6" to 5'8" in height, with medium builds, medium to dark complexions and semi-bush haircuts" had shot a man. [*Jackson*,] 331 A.2d at 190. An hour later, an officer noted an elderly man giving money to a man matching the physical description of the suspects but wearing different clothing. *See id.* The officer approached the two and asked if anything was wrong. *See id.* Despite the fact that the elderly man responded in the negative, the officer arrested the appellant based on his similarity to the description. *See id.* Our Supreme Court held that the officer lacked probable cause to arrest the appellant because of the time lapse between the murder and the arrest, as well as the generality of the description. *See* 331 A.2d at 191. **This was further demonstrated by the fact that various officers arrested fifteen to twenty people that night matching the description.** *See* 331 A.2d at 190 n.3.

**A general description, however, does not always negate probable cause.** In *Commonwealth v. Chase*, 394 Pa. Super. 168, 575 A.2d 574, 576 (Pa. Super. 1990), a police officer told his partner that he "had just purchased narcotics from a black man in a blue shirt at a particular street corner." The second officer went to the street corner, saw a man matching the suspect's description, and arrested him. *See id.* The Court distinguished *Jackson* based on the fact that the police saw the suspect matching the description at the crime scene immediately after the crime. *See*, 575 A.2d at 577. Consequently, the Court

held that the officer had probable cause to arrest appellant. **See** 575 A.2d at 579. **Thus, where the description of the suspect is a general one, an officer has probable cause to arrest a suspect where the suspect is "the only individual[] who matched the description and [is] found at the same location within a relatively short period of time."** **Commonwealth v. Toro**, 432 Pa. Super. 383, 638 A.2d 991, 1004 (Pa. Super. 1994).

**Commonwealth v. Burton**, 770 A.2d 771, 783 (Pa. Super. 2001) (emphasis in original).

We conclude that Appellant's reliance on **Anderson** and **A.P.** is misplaced. In **Anderson**, the complainant observed a man prying open the second-floor window of his home. **Anderson**, 520 A.2d at 1185. After the complainant notified authorities, police issued a bulletin describing "a black male, dark complexion, blue sweatshirt, about eighteen to twenty years old with close cropped hair." **Id.** at 1185-86. The complainant thereafter supplemented the description with the subject's height of 5'8" to 5'9", and added that the subject wore a sweatshirt zipped in front with a red stripe on the arms. **Id.** at 1186. Two hours after the attempted break-in, police detained the defendant two blocks from the scene. **Id.** This Court concluded police lacked probable cause to effect a warrantless arrest. We stated:

> Here, [the defendant] matched the general description provided by the complainant. He did stand over 5'9" tall and wore a blue sweatshirt with a zipper up the front and red stripes down the sleeves. He was observed standing on a street corner two blocks away from the scene of the crime **over two hours after it had**

**occurred**. There is, however, no evidence that appellant was acting suspiciously or that he tried to flee or evade the police. Unlike those cases … where we have found facts sufficient to establish probable cause, the only basis for such a determination in this case was [the defendant's] similarity to the general description provided by the victim. We hold that this similarity, **taken by itself**, was not enough to provide the police with sufficient facts establishing probable cause to arrest.

*Anderson*, 520 A.2d at 1187 (citations omitted, emphasis added).

In *A.P.*, during the investigation of a homicide, an officer "had been given a description of the perpetrator which described a male 'approximately five foot eight inches (5'8") [tall], light skinned, possibly [H]ispanic with a full face." *A.P.*, 617 A.2d at 768. An officer observed the defendant, who matched the description, five days later at the address of the homicide. *Id.* Upon handcuffing and searching the defendant, the officer discovered 64 vials of crack cocaine. *Id.* This Court concluded the officer lacked probable cause to effect a custodial detention of the defendant. We stated:

The officer's justification for the arrest was that the [defendant] met the general description of the person under suspicion, and that [he] was present at the same address where the homicide occurred **five days earlier**. We do not find that the presence of a[] Hispanic male in a predominantly black neighborhood, taken together with the other information known by the police officer, is sufficient to support a finding of probable cause to arrest.

*Id.* at 154 (emphasis added).

Here, by contrast, Detective Dettling testified at the suppression hearing that while conducting surveillance,

I observed a male, later identified as Michael Smith, approach [Appellant]. After a brief verbal exchange, Mr. Smith handed [Appellant] U.S. currency in the form of paper cash. [Appellant] accepted the cash and retrieved a single stamp bag of heroin from his right hoodie pocket and then delivered it to Mr. Smith. He handed it to Mr. Smith.

N.T., 7/7/22, at 8. Detective Dettling further testified:

[D]uring these operations we have constant communication with whoever is involved. We use our city-issued handheld radios. I made everybody involved in the operation aware of my observations, and the responding officers moved in to detain [Appellant] and Mr. Smith.

*Id.* at 10.

According to Detective Dettling, he has witnessed over 1,000 hand-to-hand drug transactions in his career. *Id.* at 13. Detective Dettling also stated that the transaction occurred in a high-crime area, which he described as "an open-air drug market." *Id.* at 17. Detective Dettling testified the item Appellant handed to Mr. Smith was readily identifiable as a stamp bag of heroin. *Id.* at 14. The detective admitted he lost sight of Appellant for "a minute or two maybe, a few minutes" following the transaction. *Id.* at 18. However, Detective Dettling also testified that he broadcast his descriptions of Appellant and Mr. Smith to the units "staged nearby to maneuver their vehicles and detain both males." *Id.*

Further, Detective Niemiec testified:

Myself and other detectives from the narcotics unit were in the Homewood area of Zone 5 assisting Zone 5 plainclothes detectives with a focused deterrence crime suppression operation in the area of the intersection of Frankstown and North Homewood Avenue.

…

Around that time I was in a vehicle with my partner, Detective Brian Burgunder …. He and myself were staged in the general area of the 800 block of Frankstown Avenue near North Homewood. We were listening to radio transmissions from Detective Nathan Dettling, who was conducting surveillance of the area via the city's camera network, and we were just instructed to detain individuals that Detective Dettling had observed conducting drug transactions in the area.

….

**We saw [Appellant] a minute or so after receiving the description**, and it was maybe another 30 seconds to a minute before myself and Detective Burgunder made contact with [Appellant], so two minutes at the most from the time we initially received the description and the directions from Detective Dettling until the time we were out with [Appellant].

N.T., 7/7/22, at 23-24.

On cross-examination, Detective Niemiec testified he was around the corner from the transaction, approximately a block or two away. *Id.* at 27. When asked whether he was identifying Appellant solely on the description provided by Detective Dettling, Detective Niemiec stated: "Yes, that **and Detective Dettling directing us to him … [h]is current location**." *Id.* at 27 (emphasis added).

Detective Niemiec had a description of Appellant's clothing and location, and observed Appellant in the immediate vicinity one minute after receiving the description. Under the totality of the circumstances, Detective Niemiec had probable cause to effect a custodial detention of Appellant. **Chase**, 575 A.2d at 576; **Burton**, 770 A.2d at 783. Thus, Appellant's issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2023